In re SELMAN HEATING & PLUMBING CO.

(District Court, N. D. Alabama, S. D. April 14, 1913.)

No. 11,975.

1. COMMERCE (§ 40*)—TRANSACTIONS CONSTITUTING INTERSTATE COMMERCE—SALE OF GOODS—PLACE OF PASSING OF TITLE.

The question whether or not a sale is one in interstate commerce is not to be determined by the time and place of the technical passage of title, or of the legal completion of the sale, but the entire transaction must be taken into consideration.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. § 40.*]

2. COMMERCE (§ 40*)—TRANSACTIONS CONSTITUTING "INTERSTATE COMMERCE"—
SALE OF GOODS.

A bankrupt, doing business in Alabama, ordered three car loads of
furnaces from petitioner, a corporation of another state. Two car loads
were received and accepted, but, on notice of shipment of the third, bank-
rupt objected that it was premature, because it was not ready to receive
it,· nor prepared to meet the payment on the terms of credit given. It
was then agreed that it should receive the furnaces and hold them on con-
signment, with the right to sell by consent of petitioner in each case.
Afterward bankrupt agreed to purchase the same, and gave its notes at
the prices fixed by the original order. *Held*, that the transaction was
continuous from the beginning, and the sale referable to the original or-
der, the subsequent *modification* being merely for the purpose of postpon-
ing the time of delivery, that the sale was one in "interstate commerce,"
not affected by the Alabama statute making void contracts to be per-
formed in the state by foreign corporations, which had not complied
with the requirements to entitle them to do business in the state, and the
notes were valid and provable against the bankrupt's estate.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec.
Dig. § 40.*

For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

In the matter of the Selman Heating & Plumbing Company, bank-
rupt. On petition of the Peck-Williamson Heating & Ventilating
Company to review order of referee disallowing a part of its claim.
Reversed.

Henry Bentley, of Cincinnati, Ohio, for petitioner.

Max J. Winkler, M. M. Ullman, and R. Du Pont Thompson, all of
Birmingham, Ala., for trustee.

GRUBB, District Judge. This is a petition filed by the Peck-Wil-
liamson Heating & Ventilating Company to review an order of the
referee disallowing in part its claim filed against the bankrupt es-
tate. The referee, upon motion of the trustee to expunge, disallowed
an item of $2,400, the price of a car load of furnaces, shipped the
bankrupt corporation by the petitioner on August 3, 1911. This item
was disallowed by the referee upon the theory that the contract un-
der which it was incurred by the bankrupt was void by reason of the
failure of the petitioner, which was a foreign corporation, to qualify
as required by the Constitution and laws of Alabama to do business
in that state. It is conceded that at the time of the transaction the
petitioner had not properly qualified itself to do business as a foreign
corporation in Alabama, and that under the decisions in that state,
which are followed in the federal courts, all contracts made by it and
to be performed in Alabama are avoided by such failure, except such
as relate to transactions of interstate or foreign commerce. The ques-
tion, the solution of which determines the review, is whether the
transaction, which is the basis of the asserted claim of petitioner,
is one relating to commerce between states.

The facts of the transaction are not in doubt or dispute. The
bankrupt corporation had placed an order with petitioner for three
car loads of furnaces, payment to be made on the usual terms of
credit. Two cars were delivered to and accepted by the bankrupt

under the terms of this order. Upon advice of the shipment of the third and last car of the order, the bankrupt protested against receiving that car, asserting that it was prematurely shipped, and because its immediate receipt would inconvenience the bankrupt as to storage, and also in paying for it on the terms of credit. After correspondence it was agreed that the terms of the sale should be modified, and the furnaces received by the bankrupt on consignment only, and handled for and stored at the expense of the petitioner, with the understanding that the bankrupt, by permission of petitioner in advance in each instance, might sell the furnaces from stock to its customers. The furnaces were received and stored for petitioner under this arrangement on their arrival. None were sold to customers before bankruptcy intervened. On December 18, 1911, the bankrupt by letter offered to buy these furnaces then stored with it, and after some correspondence with petitioner, on January 22, 1912, the petitioner agreed to sell the furnaces to the bankrupt. Nothing was then said as to the price, but it was assumed between both parties that the original selling price was to govern. The petitioner about that date received in payment the bankrupt's note for $2,400, a renewal of which constitutes the item in controversy.

[1] The contention of the trustee is that the original sale was rescinded before the goods were received by the bankrupt, and that it received them at first upon consignment only, and that the only sale that was made was afterwards consummated in Alabama, and while the goods sold were in Alabama, and for that reason was not a transaction in interstate commerce. The petitioner contends that the transaction from the original sale, through the consignment, and to the final sale was a continuous one; that the consignment and final sale were modifications merely of the original sale, which concededly was an interstate transaction; and, consequently, that the entire transaction was one of interstate commerce.

The trustee lays stress upon the time and place where the sale was consummated, and where the title to the property passed, and if these circumstances are controlling, the transaction was clearly not an interstate one, since it is conceded that the only sale which had the effect to pass title to the bankrupt occurred after the property sold was in Alabama, and that delivery to the bankrupt, as purchaser, there first occurred.

In the case of Dozier v. Alabama, 218 U. S. 124, 127, 30 Sup. Ct. 649, 650 (54 L. Ed. 965, 28 L. R. A. [N. S.] 264), the Supreme Court said:

"No doubt it is true that the customer was not bound to take the frame unless he saw fit, and that the sale of it took place wholly within the state of Alabama, if a sale was made. But as was hinted in Rearick v. Pennsylvania, 203 U. S. 507, 512 [27 Sup. Ct. 159, 51 L. Ed. 295], what is commerce among the states is a question depending upon broader considerations than the existence of a technically binding contract, or the time and place where the title passed. It was agreed that the frame should be offered along with the picture. The offer was a part of the interstate bargain, and as it was agreed that the frame should be offered 'at factory prices,' and the company and factory were in Chicago, obviously it was contemplated, if not agreed, that the frame should come on with the picture. In fact, the frames were

sent on with the pictures from Chicago, and were offered when the pictures were tendered, as part of a transaction commercially continuous and one, at prices generically fixed by the contract for .the pictures, and by that contract represented to be less than retail or usual prices, in consideration, it is implied, of the purchase already agreed to be made. We are of the opinion that the sale of the frames cannot be so separated from the rest of the dealing between the Chicago company and the Alabama purchaser as to sustain the license tax upon it. Under the decisions the statute as applied to this case is a regulation of commerce among the states, and void under the Constitution of the United States. Article 1, § 8; Robbins v. Shelby County Taxing District, 120 U. S. 489 [7 Sup. Ct. 592, 30 L. Ed. 694]; Caldwell v. North Carolina, 187 U. S. 622 [23 Sup. Ct. 229, 47 L. Ed. 336]; Rearick v. Pennsylvania, 203 U. S. 507 [27 Sup. Ct. 159, 51 L. Ed. 295]."

In the case of Rearick v. Pennsylvania, 203 U. S. 507, 512, 27 Sup. Ct. 159, 160 (51 L. Ed. 295), the Supreme Court said:

" 'Commerce among the several states' is a practical conception not drawn from the 'witty diversities' ([Yaites v. Gough], Yelv. 33) of the law of sales. Swift & Co. v. United States, 196 U. S. 375, 398, 399 [25 Sup. Ct. 276, 49 L. Ed. 518]. The brooms were specifically appropriated to specific contracts, in a practical, if not in a technical, sense. Under such circumstances it is plain that, wherever might have been the title, the transport of the brooms for the purpose of fulfilling the contracts was protected commerce. In Brennan v. Titusville, 153 U. S. 289 [14 Sup. Ct. 829, 38 L. Ed. 719], pictures were sold by sample, as the brooms were here, and although the pictures were consigned to the purchasers directly, the railroad collecting the price, there was no discussion of the question whether the title had passed. In American Express Co. v. Iowa, 196 U. S. 133, 143 [25 Sup. Ct. 182, 49 L. Ed. 417], that question was referred to only to be waived. In Caldwell v. North Carolina, 187 U. S. 622 [23 Sup. Ct. 229, 47 L. Ed. 336], the pictures were consigned to the defendant, an agent, as here, with the additional facts that the pictures and frames were sent in large packages, which were opened by the agent on their arrival, and that the pictures then for the first time were put into their proper frames, and, for all that appears, then for the first time appropriated to specific purchasers. In the court below all the judges agreed that the title did not pass until delivery. 127 .N. C. 521, 526, 527 [37 S. E. 138]. This court intimated nothing to the contrary."

These cases clearly hold that the question as to whether or not the transaction is one in interstate commerce is not to be determined by the time and place of the technical passage of title or of the legal completion of sale. The conceded fact that title in this case passed, and the sale was completed by delivery after the property had arrived in Alabama, is not, therefore, conclusive.

[2] It must be admitted that the transaction in its inception was an interstate one. Its subsequent modification was intended not to change the ultimate character of the transaction, but to provide security to the seller pending the delayed settlement of the purchase money. The same purpose might have been accomplished by the buyer's giving a mortgage on the property to secure the unpaid purchase money, and in that event no tenable question as to its interstate character could have arisen. The car of furnaces which was the subject-matter of the transaction was one of three ordered together. The two first cars delivered were interstate shipments beyond question. What are the facts that distinguish the third from the two first? The fur-. naces delivered in the two first cars overstocked the bankrupt, and embarrassed it for storage room for the other furnaces, and, more seriously, for the means to pay for the others until the first were dis-

posed of. This impelled the bankrupt to complain of the early delivery of the third car. The difficulty as to storage appears to have been overcome by the bankrupt. The financial difficulty proved more obstinate. It was finally surmounted by the seller agreeing to postpone payment by taking security. The form of security adopted by the parties was the retaining of title through a consignment of the property to the buyer in lieu of a present sale. The seller was unwilling to extend the buyer a long term of credit. The buyer was not in a position to purchase on a short term. Both parties desired that the completion of the transaction be deferred merely, and not called off altogether. The natural method of meeting this situation was to postpone delivery and the passing of title to the buyer by committing the property to the custody of the buyer as agent of the seller until such time as the buyer became financially able to handle the purchase, and to secure the seller in the interim by its retention of title and ownership of the goods until the arrival of such time. This obviated the necessity of returning the property or of storing it elsewhere than with the buyer, and the consequent expense of reshipment or rehandling.

The intent of the parties was not to rescind the trade, but to postpone it, and the method pursued was for the purpose of maintaining the status during the postponement pending the final completion of the transaction. In this view, the transaction was a continuous one from its inception to the final sale in January, 1912, which, in effect, related back to the original sale. Being single and continuous from its inception, the property came into the state free from the chance of being sold by a new bargain in the state to the original buyer, as much so as if the seller had taken a mortgage as his security, instead of the consignment agreement. The cases of Butler Bros. Shoe Co. v. U. S. Rubber Co., 156 Fed. 1, 84 C. C. A. 167, In re Monongahela Distillery Co. (D. C.) 186 Fed. 220, Chicago Portrait Co. v. Macon (C. C.) 147 Fed. 967, and Parsons-Willis Lumber Co. v. Stuart, 182 Fed. 779, 105 C. C. A. 211, support this conclusion.

The case of American Steel & Wire Co. v. Speed, 192 U. S. 500, 520, 24 Sup. Ct. 370, 48 L. Ed. 538, is relied upon as in conflict with the conclusion reached. The effect of this case was to determine that:

"Goods brought in original packages from another state, after they have arrived at their destination and are at rest within the state, and are enjoying the protection which the laws of the state afford, may, without violating the commerce clause of the Constitution, be taxed without discrimination like other property within the state, although at the time they are stored at a distributing point, from which they are subsequently to be delivered in the same packages, through the storage company, to purchasers in various states."

The taxability of the petitioner's property while in the possession of the bankrupt in this state is not the question presented for decision in this case. In the case of Swift v. United States, 196 U. S. 375, 399, 25 Sup. Ct. 276, 280 (49 L. Ed. 518), distinguishing the case last mentioned from that then being considered by it, the Supreme Court said:

"It should be added that the cattle in the stockyard are not at rest, even to the extent that was held sufficient to warrant taxation in American Steel & Wire Co. v. Speed, 192 U. S. 500 [24 Sup. Ct. 365, 48 L. Ed. 538]. *But it may be that the question of taxation does not depend upon whether the article taxed may or may not be said to be in the course of commerce between the states*, but depends upon whether the tax so far affects that commerce as to amount to a regulation of it.

In the case of Rearick v. Pennsylvania, 203 U. S. 507, 513, 27 Sup. Ct. 159, 161 (51 L. Ed. 295), the Supreme Court said:

"Some argument was made, to be sure, that, even if the defendant was engaged in interstate commerce when he delivered the goods, still the ordinance bound him. American Steel & Wire Co. v. Speed, 192 U. S. 500 [24 Sup. Ct. 365, 48 L. Ed. 538], was especially relied upon. But that decision did not modify the cases that we have cited. It dealt with a case where a mass of nails and iron wire was collected at Memphis from other states, by a manufacturer, for all purposes; some of the goods to be sold on the spot, some ultimately to be forwarded to purchasers in other states, but no package being consigned to or intended for any special customer, or free from the chance of being sold by a new bargain in Tennessee. Under such circumstances the goods were liable to taxation in that state. The distinction between that case and the present does not need further emphasis. In view of the many decisions upon the matter, we deem further argument unnecessary to show that the judgment below was wrong."

The case at bar resembles the Rearick Case, and is unlike the case of American Steel & Wire Co. v. Speed, which is there distinguished.

The effect of the Alabama law, if applied to the transaction involved here, is not merely to impose a nondiscriminating tax upon the petitioner's property while it is within the state of Alabama and under the protection of its laws, but to absolutely forbid the petitioner from engaging in interstate commerce until it has complied with the Constitution and laws of Alabama with respect to foreign corporations engaging in business within the state. This would be an attempt on the part of the state to regulate interstate commerce, which it is not competent for it to do.

The order of the referee, disallowing and expunging the portion of the claim contested, is set aside, and the claim, as filed, is established, so far as the contested item is concerned.