ROSE CITY BOTTLING WORKS *v.* GODCHAUX SUGARS, INC.

Opinion delivered January 16, 1922.

1.  LIENS—JURISDICTION OF CHANCERY.—A deposit of goods sold with a third person, for the benefit of the seller, to secure the price, and for the benefit of the purchaser, constituted an equitable lien in favor of the seller, and the remedy fell within the jurisdiction of the chancery court.

2.  EQUITY—RETAINING JURISDICTION FOR COMPLETE RELIEF.—Where equity once acquired jurisdiction, it was proper for that court to retain jurisdiction for the purpose of granting complete relief.

3.  FRAUDS, STATUTE OF—MEMORANDUM OF SALE.—Where a broker, as agent of both parties to a contract of sale, transmitted to a seller on order for the purchase of goods, such memorandum of the sale was sufficient to satisfy the statute of frauds.

4.  COMMERCE—SALE OF GOODS.—Where a seller shipped goods consigned to its order at the buyer's place of business in another State, thereby reserving title as security for the purchase price, the transaction constituted interstate commerce.

5.  COMMERCE—SALE OF GOODS.—Where a seller shipped goods consigned to its order at the buyer's place of business in another State, the transaction, being an interstate one, did not change its character where a subsequent arrangement was made whereby the goods were deposited with a third party until paid for, and the legality of the transaction was not affected by the fact that the seller, a foreign corporation, had not complied with the laws of the State.

6   COMMERCE—SALE OF GOODS—FOREIGN CORPORATION.—Where a foreign corporation sold goods to a resident of this State, and consigned the goods to its order at the buyer's place of business, and the seller's local agent negotiated an arrangement whereby the agent should hold the goods until paid for, neither the adjustment of the debt nor the bringing of a suit to collect the purchase price constituted doing business within the State, within the prohibition of the statute.

7.  PRINCIPAL AND SECURITY—FRAUD—PROMISSORY REPRESENTATIONS.— Where sugar sold was, in the buyer's inability to pay therefor, de-

posited with the seller's agent and secured by a bond, sureties on the bond could not escape liability upon the ground that they had been induced to sign by the agent's statement that he had arranged sale of most of the sugar at prices only slightly below the contract price, and that the loss would be very slight, as such representations were merely promissory, in view of the fact that the agent would have no authority to sell before the contract was executed.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Frauenthal & Johnson* and *Will G. Akers,* for appellant.

1. The demurrer and motion to transfer should have been sustained. The cause of action was solely an action by a vendor for damages for breach of a contract of sale of personalty,—purely a legal action. 44 N. Y. 72; 140 N. Y. 70; 155 N. Y. 481; 63 Am. St. Rep. 692; 79 Ark. 63; 92 *Id.* 111. It was a prerequisite to the existence of a seller's lien, that the title of the property should have passed to the buyer. 93 Me. 549; 45 Atl. 829; 37 Mo. App. 352; 8 L. R. A. 147. Here the title did not pass to appellant. Consignment of the goods to the seller's order with directions to notify the buyer, and sending draft with bill of lading attached, requiring payment of draft before delivering the bill of lading, held the title in the seller until payment of the draft. 24 R. C. L., 44, 45, § 307; 104 Ky. 559; 47 S. W. 602; 118 Ark. 17; 77 *Id.* 482; 92 *Id.* 287.

A receiver cannot be appointed upon the petition of the owner of the property. 23 R. C. L. 15.

2. The contract was not enforceable. The entire transaction transaction was intrastate, conducted by a foreign corporation which had not conformed to the laws of this State. C. & M. Digest, §§ 1826, 1827, 1832; 136 Ark. 52, 55; 168 N. Y. Supp. 689; 162 Wis. 279; 156 N. W. 158.

3. The agreement and bond ought not to be enforced because of the fraudulent representations by which appellants were induced to become parties thereto.

75 Ark. 92; 110 Ark. 123; 12 R. C. L. 408, § 154. Appellee was liable for its representative's misstatements. 21 R. C. L. 851, § 30; *Id.* 904, 905, § 81 and 82. Reckless statements are a defense. 12 R. C. L. 337 § 94. Equity will grant relief even though no actual fraudulent intent be shown. 12 R. C. L. 345, § 100.

*Cockrill & Armistead* and *John W. Newman,* for appellee.

Equity had jurisdiction. Goods pledged for unpaid purchase money by a vendee to the vendor confers a lien thereon in favor of the vendor in the nature of an equitable mortgage. 99 Ark. 329; 98 *Id.* 379; 49 *Id.* 279; 52 *Id.* 385. Moreover the defendants themselves set up fraud and prayed for equitable relief.

Principal and guarantors may all be sued in one action. 126 Ark. 307; 141 *Id.* 64; C. & M. Dig., §§ 1099, 1100.

The transactions were interstate throughout. The memoranda of Leigh acting as a merchandise broker were sufficient to satisfy the statute of frauds. 20 Cyc. 256; 25 R. C. L. 683; 182 S. W. 1037, 1038; 74 Ark. 395. The settlement agreement and bond and the transactions affecting it were but a means of securing the payment of a debt. These transactions did not constitute doing business in the State within the meaning of the statute. 90 Ark. 76; 63 *Id.* 268; 185 Fed. 899; 204 *Id.* 839; 208 *Id.* 409.

A sale by a foreign corporation through a broker with consignment from another State to shipper's order in this State, does not constitute doing business in this State within the meaning of the statute. 182 S. W. 1036; 191 U. S. 441, 48 L. Ed. 440; 229 S. W. (Ark.) 25; art. 1 §. 8, Const. U. S.; 241 U. S. 48, 60 L. Ed. 880; 85 Ark. 278; 136 Ark. 417; 228 S. W. (Ark). 730; L. R. A. 1916-F, 334, note and annotations.

As to fraudulent representations: There is no intimation in the agreement or bond in regard to resales.

All antecedent negotiations, oral or written, will be deemed to have been merged in the written contract. 83 Ark. 163. Moreover there is no showing that there were false representations, or that they were material, or that they worked an injury, or that they were in any such position as that they may be presumed to have contracted upon the faith reposed in such representations and relied thereon. 101 Ark. 608; 33 *Id.* 468; 119 *Id.* 617.

McCulloch, C. J. Appellee was, at the time when the transactions now under review took place, a foreign corporation with its principal place of business in the State of Louisiana, engaged in the refining of sugar and selling it at wholesale. On or about April 28, 1920, it accepted, through Henry Leigh, a merchandise broker in Little Rock, an order from appellant Rose City Bottling Works for 100,000 pounds of sugar at the price of 25 cents per pound, to be delivered in July, 1920. The order for the sugar was taken from said appellant by Leigh in conformity with ordinary trade custom pursued by merchandise brokers and was submitted to appellee at its place of business in the city of New Orleans and accepted. Immediately thereafter appellee shipped the sugar in two carload lots of 500 sacks each to its own order, and attached the bills of lading to a draft drawn on said appellant for collection through ordinary bankings channels. Leigh was not the agent of either of the parties to the purchase further than such agency for both parties as arises from the fact that as a merchandise broker he accepted the order from the purchaser and forwarded it to the seller for acceptance. When the consignment of sugar reached Little Rock, the Bottling Works was unable to pay the draft, and negotiations at once arose between the parties looking to some adjustment whereby the delivery could be made. Leigh was then authorized by appellee to act as its agent in the adjustment, and an arrangement was made as per written contract, which, after reciting the foregoing facts, contained the following stipulation:

"The bottling company agrees to pay the freight and all demurrage charges on said cars at once. Said sugar shall be unloaded and placed in storage with Leigh at the expense of the bottling company, storage charges to be five cents per sack per month or fraction thereof, from date of unloading until sugar is removed from Leigh warehouse. The bottling company will pay for said sugar twenty-five (25) cents per pound in addition to freight, demurrage and storage charges above stipulated for, and the discount of two per cent. provided in the original contract is eliminated. And in addition thereto shall be paid Godchaux interest at the rate of six per cent. per annum until the said sugar is paid for. The bottling company shall have sixty days from the date hereof within which to make payment, and within such time may make partial sales of said sugar, the proceeds of such sales to be delivered to Leigh in certified checks or New York or New Orleans exchange, payable to Godchaux. At the end of sixty days from date hereof, the balance remaining, if any, shall be paid by the bottling company in certified checks or New York or New Orleans exchange to the order of Godchaux and delivered to Leigh. No sugar shall be released until Leigh's storage is paid. The bottling company is to furnish a bond with sureties to be approved by Leigh in the sum of ten thousand dollars, conditioned upon the faithful performance hereof."

The bond recited in the stipulation was also executed with appellants Weinman, Harper, Booker and Putney as sureties.

Upon the execution of this contract and the bond pursuant thereto, the two cars of sugar were transferred to the tracks at Leigh's warehouse and there unloaded and remained there at the time of the commencement of this action. The bottling company failed to make any sales of the sugar or to pay any part of the price, and after the expiration of sixty days from the date of the contract appellee instituted this action in the

chancery court of Pulaski County against all of the appellants, praying for judgment against the Bottling Works for the price of the sugar and that a lien on that commodity be decreed and the same sold and the proceeds credited on the said judgment; also for a judgment against the sureties on the bond for the sum of $10,000. Appellants demurred to the complaint on the ground that the chancery court had no jurisdiction, and also moved that the cause be transferred to the circuit court. The demurrer and the motion were each overruled. There was a trial of the cause on the pleadings, the documentary and oral testimony, and the decree was in favor of appellee, awarding all the relief prayed for in the complaint. The sugar had declined in price to a considerable extent, and it was sold under order of the court and the proceeds applied on the decree in favor of the appellee. The decree against the Bottling Works, after crediting on the debt the price of the sugar, was for the sum of $18,367.06, and the decree against the sureties was for the sum of $10,000 with interest.

The first contention is that there were no grounds claimed for equitable relief, and that the cause should have been transferred to the law court. Appellee asserted a lien on the sugar held by Leigh under the contract in the nature of a pledge, and this gave jurisdiction to a court of equity to grant relief. Under the contract the deposit of the sugar in the hands of Leigh was for the benefit of the appellee as security for the payment of the price as well as for appellant Bottling Works as purchaser, and this constituted an equitable lien in favor of appellee, and the remedy fell within the jurisdiction of the chancery court. *Thornton* v. *Findley,* 97 Ark. 43; *Ark. Cypress Shingle Co.* v. *Meto Valley Ry. Co.,* 97 Ark. 534; *Lee Wilson Co.* v. *Crittenden County Bank & Trust Co.,* 98 Ark. 379; *Mattar* v. *Wathen,* 99 Ark. 329. It is not essential that the title should have absolutely passed from the seller to the purchaser

by delivery of the goods in order to create such a lien as a court of equity would enforce. The contract, as before stated, conferred rights upon all parties which a court of equity would enforce. It is therefore unnecessary to consider whether the title had actually passed before the execution of the contract. Having rightfully acquired jurisdiction of part of the subject-matter on equitable grounds, it was proper for the court to retain its jurisdiction for the purpose of granting all appropriate and complete relief. This upon familiar principles too well settled for it to be necessary to cite authorities in support of them.

It is next contended that the transaction involved in the contract was intrastate in it character, and that, since appellee is a foreign corporation and has never complied with the laws of this State so as to authorize it to do business here, it should be repelled from the court and denied relief. The position of appellants in this phase of the case is that at the time the contract for the storage of the sugar was entered into between the parties appellee was here acting through Leigh, its agent, and in possession, as holder of the bills of lading, of the sugar which had been consigned to the shipper's order; that the transaction was entirely intrastate in its character and constituted doing business in this State in violation of our laws. Counsel contend, in other words, that, as the bottling company had never signed a written order for the sugar, it was never bound by any contract until it executed the contract hereinbefore referred to for the storage of the sugar. They say that this was the first binding obligation between the parties, and that it occurred between them when appellee, as the vendor, was here with the goods and making a disposition of them which was wholly intrastate in its operation.

In the first place, it may be said, whether important in this phase of the controversy or not, that it is a mistake to say that appellant bottling company was not bound by the order transmitted through the broker

for the purchase of the sugar. The broker was the agent of both parties in the transaction, and his memoranda of the sale was sufficient to satisfy the statute of frauds. 20 Cyc. 256; 25 R. C. L. 683. The sugar was, as before stated, consigned to shipper's order at Little Rock. This constituted a reservation of the title as security for the purchase price. It will scarcely be contended that the delivery of the bills of lading upon the payment of the draft would change the nature of the transaction so as to transform it into an intrastate rather than an interstate incident. If such were the law, it would circumscribe business carried on between citizens of different States within such narrow limits that it could scarcely be transacted without changing the whole nature of the transaction. The contrary is well established as the law on the subject. *Norfolk & Western Ry. Co.* v. *Sims,* 191 U. S. 441. If, therefore, the goods came into the State under shipper's order consignment, retaining its character as interstate, it follows that there was no change in the character of the transaction in the further arrangement between the parties stipulating the method of payment of the price. The transaction from inception to the end was continuous and interstate in its character, for the contract now under consideration related to the method of the payment of the price and did not constitute a new contract for the sale of the goods. The following authorities fully sustain the view that the whole transaction was interstate, and that its legality was not affected by the fact that the vendor had not complied with the laws of this State. *Rosenberg* v. *Pacific Express Co.,* 241 U. S. 48; *York Mfg. Co.* v. *Colley,* 247 U. S. 21; *In re Selman Heating & Plumbing Co.,* 204 Fed. 839; *Duniba Farmers' Union Packing Co.* v. *Anderson Grocer Co.* (Mo.) 182 S. W. 1036; *Dahnke-Walker Milling Co.* v. *Bondurant,* U. S. 66 L. ed. 114, 42 S. C. Rep. 106.

The case of *York Manufacturing Co.* v. *Colley, supra,* is especially in point as announcing the law that the fact that a part of the transaction incidental

to the main one is local does not separate the transactions so as to bring the main one within the control and operation of local laws. The character of the transaction is not altered by the fact that Leigh, a resident of this State, became the agent of appellee for the purpose of negotiating this contract. It appears that Leigh executed the contract as agent of appellee, but he was also a party to the contract as pledgee and trustee for the benefit of all parties. The transaction stands the same as if appellee had sent any of its officers or agents into this State for the purpose of negotiating an adjustment of the method of securing the selling price of the goods and had in that way entered into a contract for the storage of the goods with Leigh for the purposes mentioned. It would still have constituted a mere adjustment of the method of payment of the price, and would not have changed the character of the transaction. Appellee. had a right to come into the State for the purpose of collecting its debt under the contract of sale without subjecting itself to the statutes of this State in regard to doing business here, for neither the adjustment of the debt here nor the maintenance of the litigation here for the purpose of collecting it constituted doing business within the State within the meaning of our statute. *Sunny South Lbr. Co.* v. *Niemeyer Lbr. Co.,* 63 Ark. 268; *Simmons-Burks Clothing Co.* v. *Linton,* 90 Ark. 73; *Hoyt* v. *Ogden Portland Cement Co.,* 185 Fed. 889.

This brings us finally to the consideration of the further defense brought forward by appellants who were sureties on the bond, to the effect that they were induced to sign the bond by false and fraudulent misrepresentations by Leigh acting as agent of appellee. It is contended by the sureties that Leigh represented to them, in substance, that he had arranged an immediate sale of the greater portion, if not all, of the sugar to other parties at prices slightly below the contract price between appellee and the Bottling Works, and that upon the consummation of those sales the loss

in the transaction would be very slight. There is a sharp conflict in the testimony, and the chancellor found ·against appellants on that issue. We are unable to discover a preponderance of the evidence against the findings of the chancellor. In fact, if it was clear, when the testimony is fully ·considered, that Leigh made the representation claimed to have been made by him to the sureties to induce them to make the bond, it was merely a statement of a promissory nature to the effect that he could and would make an advantageous sale of the sugar so as to obviate any serious loss. The contract at that time had not been executed, and the sureties knew that Leigh had no authority to consummate a sale of the sugar. They knew, too, that, until the sale was consummated, any negotiations were necessarily dependent upon the fluctuation of prices from day to day, and therefore they had no right to rely upon a statement of this character as the sole inducement for the execution of the bond. The chancellor was correct, therefore, in holding that under those circumstances the sureties could not escape liability on the ground that they had been induced to sign the bond by the alleged statements that the sugar could and would be immediately resold to other parties. The case presents an instance of hardship resulting from rapidly falling prices of sugar after this purchase was made, but the courts are powerless to relieve from the results of such business hazards. There is no escape from enforcing the rights of the parties according to the letter of the contract.

The decree is therefore affirmed.

Hart, J., dissents.