## MILLER-CRENSHAW CO. v. COLORADO MILL & ELEVATOR CO.

### No. 10585.

Circuit Court of Appeals, Eighth Circuit.

Jan. 21, 1937.

For former opinion, see 84 F.(2d) 930.

Arthur L. Adams, of Jonesboro, Ark., for appellant.

Glen A. Wisdom of Kansas City, Mo. (Azro L. Barber, Elbert A. Henry, and J. A. Tellier, all of Little Rock, Ark., on the brief), for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

An opinion in this case was handed down by this court on July 20, 1936, 84 F.(2d) 930, 931, but rehearing was granted because it was made to appear that this court had been led into the mistaken belief and declaration that "at the close of all the evidence both sides moved for a directed verdict." The plaintiff in the court below did move for a directed verdict at the close of all the evidence, but the defendant did not. On the contrary, it requested certain instructions to be given to the jury. The defendant did not, however, except to the refusal of the trial court to give the instructions, and it did not assign the refusal to give such instructions as error. Additional briefs have been submitted for both sides, and the appeal has been reargued and heard de novo.

The Colorado Mill & Elevator Company is a corporation under the laws of Colorado and did business at Dodge City, Kan., as the Dodge City Flour Mills. It brought this action at law to recover damages from the Miller-Crenshaw Company, an Arkansas corporation doing a wholesale grocery business at Blytheville, Ark., under the trade-name and style of Merchants Grocery Company. The suit was for damages for breach of three separate contracts. The plaintiff alleged that by the terms of the first contract, dated May 26, 1933, the grocery company agreed to buy from the plaintiff milling company 500 barrels of flour of plaintiff's manufacture at a certain price, for delivery within ninety days. That the second contract was dated June 30, 1933, and was also for 500 barrels of plaintiff's flour for shipment within ninety days. That there was also a third contract, dated July 11, 1933, alleged in the petition to be for 1,000 barrels of plaintiff's flour, also for shipment in ninety days. The plaintiff alleged that all of the contracts were consummated by one Allein Beall, Jr., who was an independent merchandise broker maintaining his own office in Helena, Ark.; that he solicited

458

and obtained the orders over the telephone from his office in Helena from the defendant's manager in Blytheville and authorized agent, Mr. Louis Nunn; that when the terms of an order for the purchase of flour were agreed upon, in each instance Mr. Beall wired the plaintiff milling company at Dodge City the substance of the order and received its acceptance by telegraph; that after the terms of each contract was agreed upon between the buyer and the seller, Mr. Beall wrote up his broker's purchase and sale notes in triplicate, showing the terms of the purchase and sale and the parties thereto. He kept one of the triplicates in his own office and mailed one each to plaintiff and defendant. That the contracts were subject to confirmation by the plaintiff and were, in each instance, confirmed and the defendant notified. The plaintiff claimed that the statute of frauds in Arkansas (Crawford & Moses' Dig.Ark. § 4864) was satisfied (if the Arkansas statute was applicable) because Allein Beall, Jr., was an independent broker and in signing the written memoranda of sale acted as the agent of both the seller and the buyer of the flour. The broker's notes of the contracts of purchase and sale were in the following form:

"Allein Beall, Jr.,
"Hellena, Arkansas.
"Sells for and the undersigned purchaser buys the following articles subject to terms and conditions stated hereon and the final confirmation of the seller.
"No. 305                    Date May 26, 1933.
"Dodge City Flour Mills
"Dodge City Kansas
    "Ship to Merchants Grocery Company,
    "Shipping Point, Blytheville, Arkansas
    "Invoice and Bill of Lading    Same
    "Bank ......
"When ship            90 Day Contract
"Quantity         Articles          Price
"500 barrels      Prize Winner      $3.95
                  Honey Rose         4.35
"Basis 48s Plain
"FOB Blytheville, Arkansas.
                        "Beall Salesman
                        "Nunn Buyer"

The signatures, "Beall, Salesman," and "Nunn, Buyer," were not written out upon the purchase and sale notes of the broker, but were typewritten on each memorandum of sale at the direction of Mr. Beall. That the defendant gave shipping orders for and accepted 129 barrels of flour under the contract of May 26, 1933, on July 7, 1933, but refused to give shipping orders for or to accept the rest of the flour covered by the contracts, or any part thereof. It did not, however, repudiate the contracts or its obligations to take the flour for some time beyond the ninety-day period specified in the contracts, but continued to hold out the expectation that it would give the necessary shipping directions until, on the 24th day of April, 1934, it definitely repudiated the contracts on the ground that they had not been signed by the defendant or its agent, Mr. Nunn. The plaintiff alleged that, as a manufacturer of the flour, it was required, as defendant well knew, to purchase and hold in its elevators sufficient wheat of proper grade to meet the contracts. That it did so and incurred purchase and carrying costs on the wheat needed to manufacture the flour ordered by defendant of approximately two cents per bushel per month, and that it also incurred a selling expense, and in its petition it specified exactly, in paragraphs X, XI, and XII, the items of loss and damage suffered by it as the direct and proximate result of the defendant's refusal to accept the flour; such damage amounting to $464.69 on the first order, $1,102.67 on the second order, and $2,444.67 on the third order of July 11, 1933. It prayed judgment in the principal sum of $4,012.03 and interest.

The defendant put all of the claims of the plaintiff in issue by categorical denials and pleaded that the alleged contracts were void under the Arkansas statute of frauds.

On the trial of the case the broker, Mr. Beall, testified to consummating contracts with Mr. Nunn, defendant's authorized agent, in all respects as claimed by plaintiff except as to the third contract of July 11, 1933, and Mr. Nunn admitted ordering the flour, except as to the 1,000 barrels called for by the third contract. There was no dispute as to any of the terms of the purchase and sale contracts except as to the third contract. It appears as to the third contract that Mr. Nunn did order 500 barrels of flour on the terms recited in the broker's note of purchase and sale, but he did not order a thousand barrels. Mr. Beall reported the order to the milling company as being for a thousand barrels, and the milling company confirmed sale of a thousand barrels and bought wheat accordingly, and stood ready to supply a thousand barrels. The broker's purchase and sale note sent to and retained with-

out objection by Mr. Nunn showed a purchase and sale of 1,000 barrels. Immediately after the transaction, Mr. Beall called on Mr. Nunn, and Mr. Nunn then had a profit of $225 on the extra 500 barrels and did not, then and there, repudiate the 1,000-barrel purchase. Afterwards, when the milling company wrote to Mr. Nunn asking for shipping instructions, it referred to the contract of July 10th (11th) as being for 1,000 barrels and Mr. Nunn did not then deny purchasing 1,000 barrels.

At the close of all the evidence the court instructed the jury to return a verdict for the plaintiff in the full amount of damages asked for as to the first and second contracts, but as to the third contract the record shows that the court, in directing the jury to return a verdict for $2,789.69, which he stated was "the amount sued for less the damages alleged to have been sustained on account of the last 500 barrels of the last order," declared: "The court thinks that the evidence here does not show that the defendant agreed or contracted to take the last 500 barrels of flour that was specified in the contract of July 10th or 11th."

In its first assignment of error the appellant grocery company contends that the court erred in refusing to dismiss the suit for want of jurisdiction at the close of all the testimony because it is alleged counsel for plaintiff, by permission of the court, amended its complaint so as to show that the amount in controversy was less than $3,000, exclusive of interest and costs. On re-examination of the question thus presented, we have found no occasion to depart from the conclusion stated in the first opinion in this case and reiterate what we then decided:

"First, it should be observed that we have searched the record, and we do not find that there was any motion to dismiss for want of jurisdiction interposed; and, second, it is noted that plaintiff's request to amend its complaint was not granted by the court. The court simply directed a verdict for an amount less than that claimed in the complaint, and less than the amount necessary to confer jurisdiction, had this been disclosed by the pleadings. As the matter goes to the jurisdiction of the court, however, we shall notice the contention, even though it was not properly brought to the attention of the lower court. McNutt v. General Motors Acceptance Corp. [298 U.S. 178], 56 S.Ct. 780, 80 L.Ed. 1135; Equitable Life Assur. Society v. Rayl (C.C.A.8) 16 F.(2d) 68; Dyar v. McCandless (C.C.A.8) 33 F.(2d) 578; Robinson v. Edler (C.C.A.9) 78 F.(2d) 817.

"The complaint asked for damages in the sum of $4,012.03, for the alleged breach of certain contracts for the sale of flour. When counsel for plaintiff moved for a directed verdict, he conceded that his proof was not sufficient to entitle him to recover for damages for the alleged sale of 500 barrels of flour included in his cause of action. Generally speaking, with certain exceptions not here material, the amount in controversy for jurisdictional purposes is to be determined not by the amount plaintiff is able to prove, but by the amount demanded in his complaint, if such demand is made in good faith. By good faith is meant that the sum demanded in the pleading is the real matter put in dispute, and not so clearly fictitious as to make it legally certain that the amount alleged was merely to confer jurisdiction because clearly beyond reasonable expectation of recovery. This is particularly true in an action sounding in damages. Southwestern T. & T. Co. v. Walker Grain Co. (D.C.) 3 F.(2d) 819; Kunkel v. Brown (C.C.A.4) 99 F. 593; O. J. Lewis Mercantile Co. v. Klepner (C.C.A.2) 176 F. 343; Interstate Bldg. & Loan Ass'n v. Edgefield Hotel Co. (C.C.) 109 F. 692; Put-in-Bay Waterworks, L. & R. Co. v. Ryan, 181 U.S. 409, 21 S.Ct. 709, 45 L.Ed. 927; Hilton v. Dickinson, 108 U.S. 165, 2 S.Ct. 424, 27 L.Ed. 688; Barry v. Edmunds, 116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729.

"The record discloses that proof was submitted by plaintiff in support of its claim for damages on account of the alleged sale of 500 barrels of flour, and it is argued that the evidence in support of this claim was substantial. On examination of the record, we think it cannot be said that the claim for damages on this item was fictitious or made in bad faith."

In addition it should be stated that the record is clear that the trial court judicially passed upon the plaintiff's claim of damage for defendant's refusal to take the last 500 barrels of flour under the third order. The court's quoted declaration that he thought the evidence did not sustain the plaintiff's claim for damage on account of the last 500 barrels ordered in the contract

of July 11, shows that the court took cognizance of plaintiff's entire claim amounting to over $4,000, and that the court, having heard all the evidence and considered it, arrived at and announced his conclusion as to all of the items in the plaintiff's petition. The item of the last 500 barrels in the order of July 11th is not shown by the record to have been dismissed without prejudice, nor could the court have allowed it to be so dismissed after the court had reached the conclusion from the evidence that the plaintiff was not entitled to recover in regard to it and had instructed the jury upon that issue. Hall, Adm'r, v. Chess & Wymond Co., 131 Ark. 36, 198 S.W. 523; Spies v. Union Pac. R. Co. (C.C.A.8) 250 F. 434.

We have considered again each of the thirteen assignments of error upon which appellant must rely to sustain its appeal in this court and adhere to the conclusions expressed in the former opinion:

"A number of matters are discussed in briefs of counsel which we think are not supported by any proper assignments of error. For instance, it is charged that the court 'erred in finding and holding as a matter of law that Allein Beall acted as the mutual agent of the parties to the suit for the purpose of executing a memorandum in writing which removed the transactions, or alleged contracts, between the parties from the operation of the statute of frauds.' This is typical of the assignments of error. This assignment of error is general and indefinite. The court made no special findings, but instructed the jury to return a verdict for plaintiff, and we are directed to no place in the record ·where any ruling can be found to which this assignment might be applicable. The object of the rule, requiring 'a separate and particular statement of each assignment of error intended to be urged, with the record page thereof. When such error is as to the admission or rejection of evidence, the statement shall quote such evidence with the rulings thereon, giving pages of the printed record where it occurs. When such error is as to the charge ·of the court, the statement shall quote the portion of the charge or the requested instruction refused which is claimed as error, giving pages of the printed record where it occurs,' is to so present the matter raised that this ·court may understand what the question is without going beyond the assignment itself, and, also, that the party assigning error may be confined to

the objection taken at the time, which must then have been stated specifically. An assignment is not sufficient which simply invites the court to search· the record for error. Ed S. Michelson v. Nebraska Tire & Rubber Co. (C.C.A.8) 63 F.(2d) 597; Lahman v. Burnes Natl. Bank (C.C.A.8) 20 F.(2d) 897; McClendon v. United States (C.C.A.8) 229 F. 523; Harris v. Newsom (C.C.A.8) 23 F.(2d) 652; Solomon v. Newburger (C.C.A.8) 35 F.(2d) 328; Allen v. Hudson (C.C.A.8) 35 F.(2d) 330; Schmidt v. United States (C.C.A.8) 63 F.(2d) 390. We have gone over each assignment of error contained in the brief. Aside from a reference to the ruling of the court in directing a verdict, they refer to no ruling of the court which, with the aid of these assignments, can be found in the record."

■ The evidence is practically without dispute, and justifies but the one conclusion, that the grocery company did order and agree to buy 1,500 barrels of flour upon the terms and conditions in the broker's notes of purchase and sale wherein the name of its manager, Mr. Nunn, was signed in typewriting by the independent broker, Mr. Beall. That such a broker's memorandum of sale containing all the terms of the contract and delivered and retained by both parties fully satisfies the statute of frauds of Arkansas is settled in Rose City Bottling Works v. Godchaux Sugars, Inc., 151 Ark. 269, 236 S.W. 825, 827, and, generally, Straesser-Arnold Co. v. Franklin Sugar Ref. Co. (C.C.A.7) 8 F.(2d) 601, 602; Butler v. Thomson et al., 92 U.S. 412, 23 L.Ed. 684; Buchman et al. v. Millville Mfg. Co. (C.C.A.2) 17 F.(2d) 983; California Lima Bean Growers Association v. Mankowitz, 154 A. 532, 9 N.J. Misc. 362; and cases digested in note III, 28 A.L.R. 1117.

■ There was no ambiguity or misunderstanding as to the terms of the sale in any instance except as stated in regard to the last order of July 11, 1933. Similar contracts, similarly made, had, on previous occasions, been faithfully carried out between the parties, and the refusal by the defendant to carry out those upon which the suit was brought plainly constituted actionable breach. As stated in the brief of appellant: "Following the allegations of Counts X, XI and XII of its complaint appellee was permitted to offer, in elaborate detail, testimony of the correctness of the damages alleged. The testimony sup-

ported the allegations of the complaint" (except as to 500 barrels in the order of July 11, 1933). The elements taken into consideration in fixing the amount of the judgment appear to have been the proper elements of damage for the breach of the contracts alleged and proven, and in the statement of the "Points" argued in the brief of appellant no mention is made, by way of attack upon, any of such elements of damage. The record, as made, does not call for consideration or discussion of any other or different measure of damages that might have been resorted to in arriving at the amount of the judgment.

It having been established that the contracts were entered into and breached as alleged, and that the damages were proven in the amount awarded, we have found no erroneous ruling or action of the trial court excepted to and presented for our review by a proper assignment of error which would call for reversal.

Affirmed.