KANSAS CITY STRUCTURAL STEEL COMPANY *v.* STATE USE ASHLEY COUNTY.

Opinion delivered December 10, 1923.

CORPORATIONS—FOREIGN CORPORATION DOING BUSINESS IN STATE.—A foreign corporation contracted to build a bridge in this State, and sublet the work to a partnership; it shipped the structual steel consigned to itself, in the State, and furnished the subcontractors with bolts and other material. *Held* that these transactions constituted "doing business" in the State within Crawford & Moses' Dig., §§ 1825-1832, regulating foreign corporations doing business in the State.

Appeal from Ashley Circuit Court; *Turner Butler,* Judge; affirmed.

*Coleman, Robinson & House,* for appellant.

Bidding upon contracts for public work does not constitute doing business within a State, within the meaning of the laws regulating foreign corporations. 14a C. J. 1279, § 3986. The only acts done by appellant, prior to securing its permit, were interstate transactions, which the State law could not affect. 66 L. ed. 114; 151 Ark. 269.

*Wilson & McGough,* for appellee.

The shipment by the appellee of materials to its own order, and delivered in this State to the subcontractor, constituted an intrastate action. 136 Ark. 52. One test laid down differentiating intrastate and interstate transactions is ownership of property after it arrives within the State. 115 Ark. 166; 124 Ark. 539; 128 Ark. 211; 87 S. E. 598. The general rule that a foreign corporation is transacting business in the State, within the meaning of the statute governing such, by transacting therein some substantial part of its ordinary business, is not altered by the fact that such transactions constitute interstate or foreign commerce. See 217 U. S. 91; 27 L. R. A. (N. S.) 493.

Wood, J. This is an action by the appellee against the appellant. The appellee alleged that the appellant was a foreign corporation engaged in the business of building bridges, and that, prior to the third day of August, 1917, it made a bid for the contract to do the bridge work on the Wilmot Road District in Ashley County, Arkansas; that its bid was accepted, and it entered into a contract with the road district for the building of bridges without first obtaining authority from the State of Arkansas to engage in such business in this State and without complying with the laws of the State applicable to such corporations.

The appellant, in its answer, specifically denied the allegations of the complaint, and alleged that, if it engaged in business in the State of Arkansas without complying with the laws in regard to foreign corporations, such business transacted by it was interstate commerce and not subject to the regulation of the State laws; that, if the laws of the State (§§ 1825-1832, inclusive, Crawford & Moses' Digest) forbidding foreign corporations to do business in the State without complying with the laws therein prescribed, be held to apply to the business of appellant, such laws were

repugnant to the commerce clause of the Constitution of the United States, and therefore void.

The facts as set forth in an agreed statement of facts are as follows: "Kansas City Structural Steel Company is a corporation organized under the laws of the State of Missouri. On May 3, 1921, it executed a contract with the Wilmot Road District for the construction of a steel bridge across Bayou Bartholomew, near the town of Wilmot, county of Ashley, State of Arkansas. The contract was signed at Hamburg, Ashley County, Arkansas, by representatives of the contracting parties, and contained a provision that it should not become effective until a bond to secure its faithful performance had been executed by the steel company. This bond was executed in Kansas City on May 5, 1921. On June 14, 1921, the defendant steel company sublet to the Yancey Construction Company of Abilene, Kansas, a partnership, the construction work upon the bridge, except the erection of the steel superstructure. On or about June 15, 1921, the Yancey Construction Company began work upon the bridge, and by August 17, 1921, had completed the greater portion of the work on the piers. On August 17, 1921, the Kansas City Structural Steel Company secured a permit, as required by law, authorizing it to do business in the State of Arkansas, and on that day complied with the laws of the State with reference to foreign corporations engaging in business within the State.

The Kansas City Structural Steel Company has not received any payments of money from the Wilmot Road District by reason of its contract for the construction of the bridge. The actual construction work done by the Yancey Construction Company was done by said company as independent contractors. The Kansas City Structural Steel Company fabricated the steel for its superstructure at its plant in Kansas City. Prior to August 17, 1921, three shipments of steel were made to Arkansas for use in the bridge, said shipments consisting

of bolts, reenforcing rods, steel piers, tubes and angles, and this material was used in construction work done by the Yancey Construction Company under its contract with the Kansas City Structural Steel Company."

In addition to the above it was shown that on July 21, 1921, the appellant shipped three cans of bridge paint, weighing 200 pounds, and also on July 2, 1921, had shipped two carloads of structural steel, and still another carload at another time, all material shipped prior to August 17, 1921. This paint and the carloads of structural steel were consigned to the appellant at Wilmot, Arkansas, from Kansas City, Missouri.

Upon the above facts the trial court rendered a judgment in favor of the appellee against the appellant in the sum of $1,000, from which is this appeal.

The facts are undisputed, and they constitute the doing of business by appellant in this State contrary to the laws applicable to foreign corporations, as contained in §§ 1825-1832 inclusive, Crawford & Moses' Digest. It appears that appellant came into this State and bid on the contract for the construction of bridges in Wilmot Road District; that its bid was accepted and the contract entered into in this State for the construction of these bridges; that, prior to the day when it obtained its license to do. business in this State, it had sublet a portion of the work which it had contracted to do, to a construction company, a partnership, in Abilene, Kansas; that, before it was authorized to do business in this State, appellant also shipped the structural steel necessary for the bridge work, consigned to itself at Wilmot, Arkansas; that, of this material, the appellant furnished the. Kansas company such bolts, reenforcing rods, steel piers, tubes and angles as were necessary to enable it to perform its part of the work, all of which it did and completed before the appellant secured its permit to do business in this State.

These acts separately (and certainly taken as a whole), looking towards the fulfillment of its contract

to construct the bridges which was entered into, and to be performed, in this State, constituted the doing of business in this State, and the court was correct in so holding. The appellant contends that these acts were wholly interstate in character, and relies upon the cases of *Rose City Bottling Works* v. *Godchaux Sugars, Inc.,* 151 Ark. 269, and *L. D. Powell Co.* v. *Rountree,* 159 Ark. 121. Neither of these cases sustains appellant's contention. In *Rose City Bottling Works* v. *Godchaux Sugars, Inc., supra,* a foreign corporation sold goods to a resident of this State and consigned the goods to its order at the buyer's place of business, and the foreign corporation, through its local agent, negotiated and arranged with a third party whereby its agent should hold the goods until paid for. In that case we said: "If therefore the goods came into the State under shipper's order consignment, retaining its character as interstate, it follows that there was no change in the character of the transaction in the further arrangement between the parties stipulating the method of payment of the price. The transaction, from inception to the end, was continuous and interstate in its character, *for the contract now under consideration related to the method of the payment of the price, and did not constitute a new contract for the sale of the goods.*"

In the case of *L. D. Powell Co.* v. *Rountree, supra,* a foreign corporation, through its traveling agent, took an order from a party in this State for certain books, and the foreign corporation shipped the books to the purchaser, under a contract by which the title was reserved in the seller until the purchase money was paid. The original purchaser, having failed to pay for the books, turned them over to an attorney in payment of a fee. Later a representative of the foreign corporation claimed the books, and the attorney having them in possession recognized the claim and offered to deliver the books to the agent of the foreign corporation. The

latter resold these books to the attorney, under a contract similar in form to the contract under which they were first purchased. We held that the first transaction was an interstate transaction, and that the latter was but a continuation of the original interstate transaction, and that the whole did not constitute the doing of business in this State by a foreign corporation, contrary to our laws. Among other things we said: "The books were not shipped into the State as sole and independent property of appellant for the purpose of selling them to the appellee or any other person. On the contrary, they were shipped into the State by appellant to McNeill on an order for future delivery, obtained by appellant's traveling agent. The McNeill contract clearly covered an interstate transaction. The recovery of the books under the McNeill contract amounted to a collection growing out of an interstate transaction. The collection was made in books instead of money, and we think the resale of them, in order to convert them into money, was a continuation of the interstate transaction."

The facts in the case at bar readily differentiate it from the doctrine of those cases. Here the bid for the contract to build bridges in the State and the entering into the contract to build those bridges were strictly intrastate acts. Likewise, the furnishing of the material to the Yancey Construction Company after the same was shipped to Wilmot, Arkansas, to the order of the appellant, was strictly an intrastate and not an interstate transaction. These transactions were intrastate and not interstate transactions, and constituted the doing of business in this State. In *Hogan* v. *Intertype Corporation,* 136 Ark. 52, there was a sale of machinery by a foreign corporation to a resident of this State, and the machinery was shipped to the purchaser from another State to the shipper's order, and was delivered by the seller to the buyer within this State. We held that this constituted an intrastate transaction. Among other things we said: "One test laid down by the Ark-

ansas cases differentiating an interstate transaction from an intrastate transaction is the ownership of the property after it arrives in the State. An interstate transaction contemplates a consignor without and a consignee within a State, or *vice versa."* The facts of the case in hand are much stronger to show an intrastate transaction than were the facts in the case of *Hogan* v. *Intertype Corporation, supra.* But this is not the case, on the facts, of a resident of this State ordering goods of a foreign corporation, and the shipment of those goods by the foreign corporation to its own order in this State for delivery to the purchaser. Not at all. Here the facts warranted the trial court in finding, and evidently it did find, that appellant shipped the material necessary in the construction of this bridge to Wilmot, and there established the emporium or warehouse from which it furnished to the Yancey Construction Company all the material the latter company required to do the work under its contract.

The facts bring this case within the principle announced by the Supreme Court of the United States in *Browning* v. *Waycross,* 233 U. S. 16; *General Ry. Signal Co.* v. *Virginia,* 246 U. S. 500, and *York Mfg. Co.* v. *Colley,* 247 U. S. 21, and that line of cases.

The judgment is correct, and it is affirmed.