## In re MEYER & JUDD.

(District Court, W. D. Tennessee, W. D. April 22, 1924.)

No. 5157.

**1. Sales ⊛451—Conditional sale contract, executed in Illinois and Indiana, covering cars in Tennessee, held governed by Tennessee law.**

Conditional sale contract, executed by parties in Illinois and Indiana, respectively, covering automobiles stored in Tennessee, was governed by laws of Tennessee, where object of transaction, though not expressed in contract, was to establish sales office or distributing agency in Tennessee.

**2. Sales ⊛464—No conditional sale of automobiles intended for resale in Tennessee.**

In Tennessee there can be no lawful conditional sale of automobile to dealer, where it is to be resold.

**3. Corporations ⊛661(2) — Foreign corporation, executing conditional sale contract, not entitled to reclaim property without compliance with state law.**

Foreign corporation, executing conditional sale contract of automobiles manufactured by it to a dealer in Tennessee, held to intend to do business in Tennessee, and it could not maintain petition in reclamation against bankrupt estate of purchaser without having complied with Shan. Code Tenn. § 2545.

**4. Bankruptcy ⊛116—Court of ancillary jurisdiction may determine ownership on petition against ancillary receiver.**

Under Bankruptcy Act, § 2, as amended by Act June 25, 1910 (Comp. St. § 9586), right of ancillary receiver to seize property of bankrupt necessarily involves right of federal District Court of district to determine whether property is property of bankrupt, on petition against ancillary receiver in reclamation.

**5. Bankruptcy ⊛164—Payment of money to attorney for bankrupt held not preference.**

Payment of compensation to attorney who had made settlement with creditors, which he thought would work out to satisfaction of all concerned, held not unlawful preference.

In Bankruptcy. In the matter of the estate of Edgar S. Meyer and Elmer Judd, individually and as copartners trading as Meyer & Judd. On petition to review action of referee. Order entered in accordance with opinion of referee.

The opinion of Referee C. L. Marsilliot is as follows:

This matter is now before the court on a petition for reclamation filed by the Stutz Motor Car Company of America, Inc., seeking to reclaim from the receiver two Stutz 4–H four-passenger automobiles, and upon an intervening petition filed by M. E. Lesser, claiming to be the owner of $500 of the funds now in the hands of the receiver in this cause. Inasmuch as the automobiles and the funds in controversy have been the subject of a somewhat extended litigation, it will be necessary to state the history of these proceedings in order to intelligently state and discuss the issues now presented for determination.

On June 13, 1921, the Stutz Motor Car Company of America, Inc., filed a bill in the chancery court of Shelby county, Tenn., against E. S. Meyer, said to be a nonresident of Tennessee and a resident of Chicago, Ill., Southern Motor Car Company, a Tennessee corporation, with its situs at Memphis, and Union Motor Car Company, another Tennessee corporation, also domiciled at Memphis. In this bill the Stutz Motor Car Company of America, Inc., alleged the following facts:

That defendant E. S. Meyer secured from the complainant a franchise right to represent the complainant in Memphis, Tenn., by selling the automobile products of the complainant; that Meyer bought from the complainant two model H four-passenger 1920 Stutz automobiles, for which he executed his several promissory notes, and complainant retained title to said automobiles by virtue of a contract of sale made and executed in the city of Indianapolis, Ind., the home office of complainant, which contract was exhibited with the bill, and this contract was executed on or about the 23d day of April, 1921; that defendant E. S. Meyer, with whom said contract was made, failed to meet the first note given in pursuance of said contract of sale of the automobiles mentioned in the bill, and that on May 23, 1921, default was entered on said note by complainant; that pursuant to the terms of said contract the title to said automobiles was to vest in complainant, and that the machines were to be reshipped to complain-

ant at Indianapolis, Ind., but that defendant in this connection, upon said default, refused and failed to comply with the terms of his contract; that defendant Meyer, while in the city of Memphis in the automobile business, contracted obligations with defendants Southern Motor Car Company and Union Motor Car Company; that the nature of the obligations claimed by the last-mentioned corporations were to complainant unknown, but that the Union Motor Car Company had taken one of the model H 1920 four-passenger Stutz automobiles and appropriated the same to its own use, and holds the same without right or authority; that the Union Motor Car Company had also, without right, title, or process of law, taken a model H four-passenger automobile from the place of business of Edgar S. Meyer on an alleged obligation of said Meyer to said company, notwithstanding title to said automobile was in the complainant.

It is also alleged that the defendant corporations are endeavoring with all speed to dispose of these automobiles, and that unless prevented by order of the court they will dispose of the same to the great injury, loss, and damage of the complainant. The prayer of the bill is that an attachment issue and be levied upon the two automobiles described; that, in the event the property cannot be located, an injunction issue restraining the defendant corporations from disposing of the property until further orders of the court, and that complainant have a decree for the possession of the automobiles described and vesting the title to same in complainant. Judgment is also prayed against defendant E. S. Meyer for the amount due complainant on the unpaid notes.

So far as this record shows, no answer was made to this bill. A week later, and on June 20, 1921, the Stutz Motor Car Company of America, Inc., filed another bill in the chancery court of Shelby county, Tenn., against W. D. Mathis, E. S. Meyer doing business as the Memphis Stutz Company, and E. S. Meyer individually. The substance of the allegations of this bill are as follows:

That defendant E. S. Meyer had theretofore engaged in business in the city of Memphis in the sale of Stutz automobiles under the trade-name of the Memphis Stutz Company, with defendant W. D. Mathis as one of his employees; that Meyer failed in business on or about May 23, 1921, at which time there were in his possession two Stutz

4–H four-passenger motor cars, the title to which had been retained by complainant; that Meyer had breached his contract with complainant, in that he had failed to pay certain notes given in pursuance thereof; that complainant, in the exercise of its rights under the contract, had taken possession of said automobiles, and had ordered the same to be delivered to the railroad platform of the Illinois Central Railroad Company in Memphis; that the automobiles were taken to the railroad station for shipment under the supervision of one L. M. Dreves, who was at that time acting under direct authority from complainant, but that before the cars could be actually transported, and while they were at the railroad station, defendant Mathis went to the railroad station and removed the cars, without the knowledge of the complainant or its agents, and drove them to the Court Avenue Garage, where they were secreted for a time, then drove them to the temporary quarters and former place of business of defendant Meyer, and then had them taken to the place of business of the Union Motor Car Company, where they remained until knowledge of their whereabouts was gained by complainant; that an attachment proceeding had been instituted against the Union Motor Car Company, the Southern Motor Car Company, and E. S. Meyer, whereupon the Union Motor Car Company ordered the cars removed from its place of business; that, after defendant Mathis had so wrongfully taken possession of the two automobiles, he disposed of one of the two cars to Mrs. Robert Buckingham, of the city of Memphis, receiving therefor a cash consideration, which he had deposited in some bank unknown to complainant; that Mathis took in exchange a used Stutz automobile, which it is alleged Mathis still has under his control, and that he still has possession of the remaining new Stutz car.

It is then set out that the title to these automobiles has always been in complainant; that no rights of innocent purchasers have interfered, as in the case of the car sold to Mrs. Buckingham; and that the action of Mathis in taking possession of these cars was done with full knowledge of an injunction which had been issued by the chancery court enjoining the Union Motor Car Company and the Southern Motor Car Company from disposing of the same. The prayer of the bill is that an injunction issue against Mathis to restrain him from disposing of the new Stutz automobile and the used car in his possession, and from removing or in any manner molesting the money received from the sale of the automobile to Mrs. Buckingham, and that he be required to make a full disclosure in the premises. To this bill W. D. Mathis, on July 23, 1921, filed an answer, the substance of which is as follows:

It is admitted that during the spring of 1921 E. S. Meyer was engaged in the automobile business in Memphis, under the trade-name of the Memphis Stutz Company, and the defendant was in his employ. It is neither admitted nor denied that Meyer failed, but it is admitted that Meyer had ceased to do business in Memphis under the name and style of the Memphis Stutz Company under circumstances later set out in the answer. It is admitted that at the time Meyer suspended business there were in the possession of the business two 4–H four-passenger Stutz motor cars, but it is denied that these automobiles were at that time the property of complainant. Defendant denies that Dreves was the agent of complainant, and denies that he went to any railroad platform and removed the automobiles in question. It is admitted that, prior to the filing of the bill, defendant had in his possession two 4–H four-passenger Stutz automobiles, and defendant asserts he had a right to have these automobiles in his possession, and that he had a right to dispose of them. Defendant admits that he did dispose of one of these machines to Mrs. Robert Buckingham, of Memphis, and that prior to the filing of the bill of June 13th he had agreed to dispose of the other car.

In section 5 of the answer Mathis states that, some time during the spring of 1921, Meyer, trading as the Memphis Stutz Company, entered into a contract with complainant under the terms of which he (Meyer) was to handle the product of complainant in the city of Memphis and territory adjacent thereto; that under the terms of the contract Meyer purchased from the complainant six 4–H four-passenger Stutz automobiles for the sum of $15,006; that Meyer made a cash payment thereon of $3,500, following which the cars were delivered to Meyer; that one of said automobiles was sold in the regular and usual course of business to M. E. Lesser, of Memphis, who paid for it in full; that, a short time after acquiring said contract with complainant, Meyer was taken violently ill, became mentally unbalanced, and from that date to the time of the filing of the answer Meyer had been confined in a sanitarium for

the insane, he having been adjudged non compos mentis by the courts of Cook county, Ill.; that in an effort to assist in the liquidation of the business interests of Meyer in Memphis, and pursuant to an understanding with the representatives of Meyer in Chicago, and also with complainant, three of the six 4-H four-passenger Stutz automobiles were returned by defendant to complainant, upon the agreement that a credit of $2,500 per car would be made by complainant upon the automobiles so returned, and with the additional understanding and agreement on the part of complainant to credit the indebtedness held by it against Meyer with any and all sums which complainant might receive in excess of $7,500 upon a further sale of the three machines so returned; that thereafter defendant, acting pursuant to the aforesaid understanding, agreed to sell the two remaining automobiles, and notified complainant to that effect, at the same time offering to pay the complainant the balance of $4,006 thereafter to be due and owing by Meyer as the balance on his purchase price of $15,006; that the offer by defendant to complainant was made on several occasions and repeatedly declined by complainant; that defendant now stands ready, willing, and able to pay to complainant the balance of $4,006, less any amount which may be awarded him by the court as compensation for the loss, if any, which he or his codefendant Meyer may have sustained as a result of the issuance of the injunction prayed in the bill.

It is admitted that one of the two remaining automobiles was sold to Mrs. Buckingham for $2,500, on which purchase price defendant received $1,500 in cash and a used Stutz automobile; that the proceeds of this sale are still in his possession, and he offers to hold the same subject to the judgment of the court; that this car was sold and delivered to Mrs. Buckingham prior to the issuance of the injunction, and that he is holding a certain used car in his possession subject to the orders of the court. Defendant further states that, while he had agreed to a sale of the other, or last, of the before-mentioned six automobiles, he had refrained from making an actual delivery of the same in deference to the restraining order.

It appears from the record of the proceedings of the chancery court of Shelby county, Tenn., that proof was being taken by deposition in those causes, when, on the ——— day of ———, 1922, the Central Trust Company of Illinois filed in the District Court of the United States for the Western Division of the Western District of Tennessee a petition, in which it is set out that on June 8, 1921, an involuntary petition in bankruptcy was filed in the United States District Court at Chicago, Ill., against E. S. Meyer and Elmer Judd, individually and as copartners trading as Meyer & Judd; that on January 30, 1922, petitioner was appointed receiver of the assets of said bankrupts within the jurisdiction of the District Court at Chicago; that there was property belonging to the estate of said parties within the jurisdiction of the United States District Court for the Western Division of the Western District of Tennessee; and petitioner prayed that it be appointed ancillary receiver to take charge of and preserve said assets pending further orders of the court, and that an injunction issue restraining the Stutz Motor Car Company of America, Inc., from the prosecution of the two suits which had been filed in the chancery court of Shelby county, Tenn., and that it be required to present to this court whatever claims it might have to the automobiles and money in question.

Hon. J. W. Ross, United States District Judge for the Western District of Tennessee, being absent from the Western division of said district, said petition was referred by the clerk of said court to Hon. W. F. Poston, the referee in bankruptcy of said division, who, on February 7, 1922, in accordance with the prayer of its petition, appointed Central Trust Company of Illinois ancillary receiver. On March 22, 1922, the District Court entered an order directing the Stutz Motor Car Company of America, Inc., its agents or attorneys, to appear on March 27, 1922, in the United States courtroom in the city of Memphis, then and there to show cause why the injunction prayed in said petition should not be granted, and ordering that, pending the hearing of said petition, the Stutz Motor Car Company of America, Inc., its agents and attorneys, were enjoined from disposing of the property. On the ——— day of ———, 1922, the District Court issued its injunction as prayed.

On April 14, 1922, C. L. Marsilliot was appointed as referee in bankruptcy for the Western division of the Western district of Tennessee, to succeed Col. W. F. Poston, and on the ——— day of ———, 1922, an order was entered by the District Court referring this cause to the present referee, "for the purpose of enabling said petitioner to examine the said alleged bankrupts

and such other persons as may appear necessary for the purpose of discovering assets of the said alleged bankrupts, and taking such other steps as may be necessary in connection with the preservation of their estate in this district and the protection of the interests of creditors therein." On April 22, 1922, the Central Trust Company of Illinois filed its petition, in which, after stating the proceedings in bankruptcy mentioned above, alleged that E. S. Meyer departed from the city of Memphis about the 1st of June, 1921, and left in the possession and under the control of W. D. Mathis and L. L. Mouser one used Stutz automobile and one new Stutz automobile; that M. E. Lesser, the attorney for the bankrupts, had in his possession a check for $1,500, or the cash proceeds of said check, and that the said two automobiles and $1,500 in money constituted a part of the assets of the alleged bankrupts, and praying that these parties be directed to forthwith deliver said property to the ancillary receiver.

Pursuant to this petition, the two automobiles mentioned and the $1,500 in cash were delivered to the ancillary receiver and are now in his possession. This, in substance, is the history of the proceedings leading up to the present controversy.

On July 1, 1922, the Stutz Motor Car Company of America, Inc., filed its petition in reclamation in the District Court of the United States for the Western Division of the Western District of Tennessee, sitting in bankruptcy, in which it is alleged that petitioner is a corporation created under the laws of the state of Indiana and having an office for the transaction of its business in Memphis, Shelby county, Tenn.; that on June 8, 1921, an involuntary petition in bankruptcy was filed in the District Court of the United States for the Northern District of Illinois, praying that Edgar S. Meyer and Elmer Judd, individually and as copartners, be adjudged bankrupts, and that on February 7, 1922, the Central Trust Company of Illinois was appointed ancillary receiver for the Western division of the Western district of Tennessee; "that the said ancillary receiver, pursuant to the order of its appointment, became possessed of two certain Stutz 4–H four-passenger automobiles owned by the petitioner; that neither the ancillary receiver nor the alleged bankrupts have any color of right to the possession of said property, and the receiver is wrongfully withholding said automobiles from the petitioner." The prayer of the petition is that the ancillary receiver be

directed to deliver to petitioner, or its agent, the property described, and offers to execute a forthcoming bond in such amount as the court might order.

On July 15, 1922, the Central Trust Company of Illinois, ancillary receiver, filed its answer. It admits that the petitioner is an Indiana corporation, but neither admits nor denies that it has an office in Memphis for the transaction of business. It admits the filing of the involuntary petition in bankruptcy in the District Court of the United States for the Northern District of Illinois, and admits its appointment as ancillary receiver in the Western division of the Western district of Tennessee, but denies that it became possessed of the said 4–H four-passenger automobiles owned by the petitioner; denies that it, as ancillary receiver, or the alleged bankrupts, have no color of right to the possession of said property, and denies that it is wrongfully withholding said property from petitioner. It avers that it, as ancillary receiver, became possessed of two Stutz 4–H four-passenger automobiles as the property of the bankrupts, and avers that said two automobiles were the property of the bankrupts, and that it, as receiver, is holding the same as the property of said bankrupts for the benefit of the estate and creditors under the act. It avers that the petitioner has no right to the possession of said automobiles. It denies that the petitioner is entitled to the relief sought in its petition for the reasons set forth above, and also because petitioner has never qualified to do business in the state of Tennessee.

On July 5, 1922, the Stutz Motor Car Company of America, Inc., filed in this cause a claim for $13,600, in which it is stated that the same is represented by promissory notes, the originals of which are filed and made a part of the claim, and in which it is also stated that no note has been received by the claimant to represent said amount. It is also said that the claimant has not received any security for said debt whatever.

On July 10, 1922, M. E. Lesser filed his petition in this cause, in which appear the following averments: That he is a duly licensed and practicing attorney at law in the city of Memphis, Tenn.; that as early as April, 1921, he was employed by the alleged bankrupts to represent them in legal matters, pursuant to which employment he has served in the capacity of their legal adviser up to the time of the filing of the petition herein; that he has on numerous occasions within the past year been called upon to represent and has represented the

interests of the alleged bankrupts, whether they were being conducted under the name of Edgar S. Meyer and Elmer Judd as individuals, or Edgar S. Meyer and Elmer Judd trading as a copartnership under the name of Meyer & Judd, or as their joint or several interests appear in the business known as the Memphis Stutz Company; that during the early part of May, 1921, at the request of the alleged bankrupts, petitioner went to Chicago, Ill., for the sole and express purpose of conferring with the alleged bankrupts or their legal representative, in an effort to devise ways and means to not only protect their interests, but to conserve their assets for the benefit of their creditors; that on his arrival in Chicago he found the affairs of the alleged bankrupts in a most involved and precarious condition, both within and without the courts; that in an effort to adjust matters he remained in Chicago approximately a week; that as a result of his efforts an agreement was reached with all parties, whereby the affairs of the alleged bankrupts were settled; that in making said trip his expenses were at least $150, and for his services so rendered he made a charge of $350, which was fair and reasonable, and which was satisfactory to the bankrupts and their creditors.

Petitioner further states that his expenses of $150, and his fee of $350 were paid in the following manner: That upon petitioner's return from Chicago he learned that during his absence one Stutz automobile belonging to the alleged bankrupts was sold to Mrs. Buckingham, of Memphis, the consideration for said sale having been the payment by her of $1,500 in cash and an allowance made to Mrs. Buckingham on a used Stutz automobile, which was delivered by her to the representatives of the alleged bankrupts; that shortly after receiving the check of Mrs. Buckingham the representative of the alleged bankrupts exchanged same for a cashier's check of the Central State National Bank of Memphis, which check was indorsed to petitioner by W. D. Mathis as the representative of the alleged bankrupts, in order that petitioner might use the same for the purpose of securing petitioner's claim of $500; that shortly after petitioner had received said check a proceeding was instituted in the chancery court of Shelby county, Tenn., against Edgar S. Meyer et al., wherein it was sought to attack the sale made as aforesaid to Mrs. Buckingham; that out of respect for cer-

tain orders which were later entered in said cause in the chancery court of Shelby county, Tenn., petitioner did not attempt to secure payment of his claim of $500 out of the proceeds of said cashier's check, but continued to hold same in his possession, but then and at all times thereafter asserting that petitioner had a claim on said funds to the extent of $500, for the payment of which he held said cashier's check as security. It is further averred that, pursuant to orders entered by the District Court of the United States for the Western Division of the Western District of Tennessee in this cause, all orders theretofore issued by the chancery court of Shelby county, Tenn., had been dissolved; that out of further respect to orders issued by this court petitioner had delivered the aforesaid check for $1,500 to the attorney for the ancillary receiver herein, notice having been given to said ancillary receiver of petitioner's claim. The prayer of the petition is that an order be entered by this court allowing petitioner's claim, that a lien be entered on said fund, and that the ancillary receiver be ordered and directed to pay the same.

The whole matter will be more readily disposed of by first considering the petition in reclamation of the Stutz Motor Car Company of America, Inc. The questions raised by this petition may thus be stated: (1) By what law is the contract between petitioner and Edgar S. Meyer (trading as the Memphis Stutz Company) governed? (2) Is the contract valid as against the receiver in bankruptcy? (3) Can petitioner take the used Stutz car and the $1,500 in money, as well as the unsold automobile? (4) Is the petitioner precluded from filing a petition in reclamation in a federal court, where it has failed to comply with the statutory requirements for foreign corporations before doing business in the state? These propositions will be discussed in the order mentioned.

*I. By what law is the contract between petitioner and Edgar S. Meyer (trading as the Memphis Stutz Company) governed?*

It is admitted that the contract which forms the basis of the transactions between petitioner and Meyer was executed by Meyer at the office of the district sales manager of the petitioner at Chicago, Ill.; that it was executed on behalf of the petitioner at Indianapolis, Ind., its home office, by N. N. Thompson, its president. It is also admitted that the automobiles described in the contract had been retaken by petitioner from a former distributing agency at Memphis,

and were, at the time of the execution of the contract, stored with the Patterson Transfer Company at Memphis. It is also admitted that, upon the execution of the agreement, the petitioner gave to Meyer an order on which the automobiles were delivered to the latter by the Patterson Transfer Company in Memphis.

It is earnestly insisted by petitioner that the execution of the contract by the president of the petitioning company in Indianapolis was the last operative act necessary to complete the agreement, and that, in consequence, the rights of the parties under that instrument are to be governed by the laws of the state of Indiana. On the other hand, it is vigorously contended by the trustee that the contract was to be performed in Tennessee, and is to be construed by the law of the latter state.

Questions involving conflict of laws are among the most difficult with which the courts are called upon to deal; hence it becomes necessary to go fully into the facts of each case as presented. The contract is not lengthy, and for convenience of reference it is now set out in extenso:

"Conditional Sales Agreement.

"This agreement, made this 23d day of April, 1921, by and between Stutz Motor Car Company of America, Inc., of Indianapolis, Indiana, and Memphis Stutz Company, Memphis, Tennessee, witnesseth:

"The said Stutz Motor Car Company of America, Inc., hereby agrees to sell and the said Memphis Stutz Company hereby agrees to buy six Stutz motor cars, described as follows:

| Model. | Color. | Type. | Serial No. | Motor No. | Axle No. | Tires. |
|--------|--------|-------|------------|-----------|----------|--------|
| 4H | Blue | 4 Pass. | 8818 | 8827 | 8901 | Silvertown |
| 4H | Blue | 4 Pass. | 8829 | 8831 | 8912 | " |
| 4H | Blue | 4 Pass. | 8839 | 8846 | 8918 | " |
| 4H | Blue | 4 Pass. | 8871 | 8880 | 8897 | " |
| 4H | Blue | 4 Pass. | 8945 | 8943 | 9020 | " |
| 4H | Blue | 4 Pass. | 8985 | 8987 | 9047 | " |

"Said Memphis Stutz Company agrees to receive said motor cars, together with all storage, etc., charges thereon, and to pay to the Stutz Motor Car Company of America, Inc., therefor the sum of twelve thousand four $^{80}/_{100}$ dollars, payable respectively in installments represented by six negotiable promissory notes, each for the sum of two thousand and $^{80}/_{100}$ dollars, payable, respectively, two each, thirty days, sixty days, and ninety days, at the Drexel State Bank at Chicago (city), Illinois (state), with interest at the rate of six per cent. per annum.

"It is agreed that, until paid for in full, the title to the above-described motor cars shall be and remain in the Stutz Motor Car Company of America, Inc., and said Memphis Stutz Company shall be deemed only a lessee of same. Said Memphis Stutz Company agrees to place said motor cars on exhibition in its salesrooms and that said motor cars will not be used or operated.

"Upon payment of each one of the notes above mentioned as they respectively become due, it is agreed that title to any one of the cars above described as may be designated by said Memphis Stutz Company shall thereupon pass to and vest in the said Memphis Stutz Company or its assignee. The promissory notes given as above set out, or any renewal thereof, shall not, by the giving or acceptance thereof, divest the title of said Stutz Motor Car Company of America, Inc., in said motor cars until said notes are paid in full, except as herein provided. Upon failure to pay any of said notes at maturity, if they shall be placed with attorneys for collection, said Memphis Stutz Company agrees to pay all attorney's fees, collection costs, and charges.

"Upon default being made in the payment of said notes, or either of them, this agreement shall cease and determine, and said Stutz Motor Car Company of America, Inc., may immediately take possession of said motor cars above described. In such case all partial payments made on said notes or any of them shall belong to said Stutz Motor Car Company of America, Inc., and shall be deemed in compensation for and as agreed liquidated damages.

"In witness whereof the parties have hereunto set their hands and seals this 23d day of April, 1921.

"[Signed] Memphis Stutz Co.,
"By E. S. Meyer.
"[Signed] N. N. Thompson."

At the outset, it is proper to direct attention to some of the outstanding features of this instrument:

First, it is to be noted that the second party in the contract, "Memphis Stutz Company," agreed to place the motor cars on exhibition in its salesroom and the machines were not to be used or operated. The Memphis Stutz Company executed six promissory notes, of $2,000.80 each, which were made payable at the Drexel State Bank, Chicago, Ill. The purpose of the business operated by Edgar S. Meyer under the name of "Memphis Stutz Company" was that of "selling Stutz automobiles and buying used cars," as well as dealing in acces-

sories. The Memphis Stutz Company had no agency for any other make of automobiles. The character of the business conducted by Meyer was "to sell new Stutz automobiles and buy and sell used cars," as well as accessories.

From the foregoing the facts may thus be summarized: The petitioner, prior to April 23, 1921, the date of the present contract, had had a distributing agency in Memphis, which had been discontinued. Petitioner had in storage at Memphis six of its cars. Obviously it was the desire of petitioner to effect a new arrangement for the sale of its cars. The contract was signed by Meyer in Chicago, at the office of the district distributing agency of petitioner, and was forwarded to the home office of petitioner at Indianapolis, where it was executed by the president of petitioning company, and an order forwarded to Meyer, upon which he secured delivery to him of the automobiles in Memphis. Meyer then proceeded to undertake to carry out the real purpose of the contract, the distribution and sale of Stutz automobiles in Memphis.

While, as pointed out by Circuit Judge Batts, in George v. Oscar Smith & Sons Co. et al., 250 Fed. 41, 162 C. C. A. 213, there are many considerations which may and do affect the determination of the question as to what law shall govern the construction and validity of a contract, and while the authorities are not always harmonious, nevertheless, a review of the leading cases on the subject will disclose the principle upon which the present controversy may be determined:

Pritchard v. Norton, 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104.

J. P. Harrison, Jr., had secured a judgment in the district court of the state of Louisiana for the parish of Orleans for $55,000 against the New Orleans, Jackson & Great Northern Railroad Company. One Richard Pritchard signed an appeal bond for the railroad company. On June 30, 1874, H. S. McComb and E. Norton executed a bond to Pritchard, whereby they agreed to indemnify him in the amount of said judgment, should it be affirmed by the Supreme Court of Louisiana. The bond recited that Pritchard had already signed the appeal bond as surety. The judgment against the railroad company was affirmed, and Pritchard was required to pay, and did pay, the amount of the judgment. He brought suit against McComb and Norton on the bond. McComb and Norton set up the defense that the bond sued on was delivered to Pritchard in the state of New York; that there was no consideration to McComb and Norton for the execution of the bond, by reason of which fact under the laws of the state of New York, the bond was void. The United States Circuit Court charged the jury that the indemnifying bond to Pritchard, in respect to its fair construction and the consideration requisite to support it, was to be governed by the law of New York and not of Louisiana, and that, if the jury believed from the evidence that the appeal bond signed by Richard Pritchard as surety was signed by him at the instance or request of McComb and Norton, and that no consideration passed between Pritchard and McComb and Norton for the signing and execution of the indemnifying bond between them, the bond was void for want of any consideration, and not to sustain it, and no recovery could be had upon it.

The plaintiff requested the court to charge the jury that, if they found from the evidence that the consideration for the indemnifying bond was the obligation contracted by Pritchard as surety on the appeal bond, and that the obligation of the indemnifying bond was to hold harmless and indemnify Pritchard from loss or damage by reason of or growing out of the said appeal bond, then the consideration for said indemnifying bond was good and valid, and is competent to support the action upon the bond for the recovery of any such loss or damage sustained by Pritchard. This request the court refused. Exceptions were duly taken to these rulings, which were assigned as error, there having been a judgment for the defense.

The Supreme Court found that by the law of Louisiana the pre-existing liability of Pritchard as surety for the railroad company would be a valid consideration to support the promise of indemnity, notwithstanding his liability had been incurred without any previous request from the defendants. The court said:

"The single question presented by the record, therefore, is whether the law of New York or that of Louisiana defines and fixes the rights and obligations of the parties. If the former applies, the judgment of the court below is correct; if the latter, it is erroneous. The argument in support of the judgment is simple, and may be briefly stated. It is that New York is the place of the contract, both because it was executed and delivered there, and because,

no other place of performance being either designated or necessarily implied, it was to be performed there, wherefore the law of New York, as the lex loci contractus, in both senses, being lex loci celebrationis and lex loci solutionis, must apply to determine, not only the form of the contract, but also its validity. On the other hand, the application of the law of Louisiana may be considered in two aspects: As the lex fori, the suit having been brought in a court exercising jurisdiction within its territory and administering its laws; and as the lex loci solutionis, the obligation of the bond of indemnity being to place the fund for payment in the hands of the surety, or to repay him the amount of his advance, in the place where he was bound to discharge his own liability. * * *

"The rule deduced by Mr. Wharton, in his Conflict of Laws, as best harmonizing the authorities and effecting the most judicious result, and which was cited approvingly by Mr. Justice Hunt in Scudder v. Union National Bank, 91 U. S. 406, is, that 'obligations in respect to the mode of their solemnization are subject to the rule locus regit actum; in respect to their interpretation, to the lex loci contractus; in respect to the mode of their performance, to the law of the place of their performance. But the lex fori determines when and how such laws, when foreign, are to be adopted, and, in all cases not specified above, supplies the applicatory law.' This, it will be observed, extends the operation of the lex fori beyond the process and remedy, so as to embrace the whole of that residuum which cannot be referred to other laws. And this conclusion is obviously just; for whatever cannot, from the nature of the case, be referred to any other law, must be determined by the tribunal having jurisdiction of the litigation, according to the law of its own locality."

We pause in this quotation to note that it is admitted in the case at bar that there is no statute in Indiana on the subject of conditional sales. It was established in evidence, however, by the testimony of Mr. Posert, that the decisions of Indiana sustain such contracts under the common law. We quote further from the decision:

"The question of consideration, whether arising upon the admissibility of evidence or presented as a point in pleading, is not one of procedure and remedy. It goes to the substance of the right itself, and belongs to the constitution of the contract. The difference between the law of Louisiana and that of New York, presented in this case, is radical, and gives rise to the inquiry: What, according to each, are the essential elements of a valid contract, determinable only by the law of its seat? and not that other, what remedy is provided by the law of the place where the suit has been brought to recover for the breach of its obligation? * * * The law we are in search of, which is to decide upon the nature, interpretation, the validity of the engagement in question, is that which the parties have, either expressly or presumptively, incorporated into their contract as constituting its obligation. * * *

"If, now, we examine the terms of the bond of indemnity, and the situation and relation of the parties, we shall find conclusive corroboration of the presumption that the obligation was entered into in view of the laws of Louisiana. The antecedent liability of Pritchard, as surety for the railroad company on the appeal bond, was confessedly contracted in that state, according to its laws, and it was there alone that it could be performed and discharged. Its undertaking was that Pritchard should, in certain contingencies, satisfy a judgment of its courts. That could be done only within its territory and according to its laws. The condition of the obligation, which is the basis of this action, is that McComb and Norton, the obligors, shall hold harmless and fully indemnify Pritchard against all loss or damage arising from his liability as surety on the appeal bond. A judgment was in fact rendered against him on it in Louisiana. There was but one way in which the obligors in the indemnity bond could perfectly satisfy its warranty. That was, the moment the judgment was rendered against Pritchard on the appeal bond, to come forward in his stead, and by payment to extinguish it. He was entitled to demand this before any payment by himself, and to require that the fund should be forthcoming at the place where otherwise he could be required to pay it. Even if it should be thought that Pritchard was bound to pay the judgment recovered against himself, before his right of recourse accrued upon the bond of indemnity, nevertheless he was entitled to be reimbursed the amount of his advance at the same place where he had been required to make it. So that it is clear, beyond any doubt, that the obligation of the indemnity was to be fulfilled in Louisiana, and consequently is subject, in all matters affecting its construction and validity, to the law of that locality."

Bryant, Trustee, v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997.

On July 20, 1904, Newton & Co., retail and wholesale merchants in Lafayette county, Ark., entered into a contract with Swofford Bros. Dry Goods Company, of Kansas City, Mo., by which the former purchased from the latter certain goods which were selected by Newton & Co. from sample or from stock of the dry goods company at Kansas City. The contract provided that the title and right to immediate possession of the goods so sold and shipped by the dry goods company and the other profits derived from the sale of same by Newton & Co., whether in cash or note or book account, should be vested and remain in the dry goods company until the full purchase price for the same should be paid. The contract was neither filed nor recorded. It was contemplated by the parties that Newton & Co. might sell the goods so delivered in the usual course of their business.

On July 3, 1905, Newton & Co. filed a voluntary petition in bankruptcy, and were adjudicated bankrupts. In the meantime the Newtons had surrendered to the dry goods company, as belonging to it under the provisions of the contract, goods of the value of over $5,000, notes to the amount of about $1,700, and customers' accounts to the amount of about $8,000. After the appointment of the receiver in bankruptcy, he demanded from the dry goods company possession of the customers' notes and accounts mentioned above, which were surrendered by the dry goods company under a stipulation reserving their rights therein.

The court below found as a matter of law that the original contract was one of conditional sale, and as such was not required by the laws of Arkansas to be filed or recorded. The dry goods company prevailed below, and the case found its way to the Supreme Court, which said:

"There is nothing in the nature of this contract which would forbid the parties from entering into it if it is valid by the laws of the state where made, but in bankruptcy the construction and validity of such a contract must be determined by the local laws of the state. * * * It follows that, so far as the identified goods and notes and accounts are concerned, the intervener, the dry goods company, must prevail."

Union Trust Co. v. Grosman et al., 245 U. S. 412, 38 Sup. Ct. 147, 62 L. Ed. 368.

In this case suit was brought in the District Court of the United States for the Northern District of Texas by the Union Trust Company against Hiram Grosman and against Mrs. Grosman, growing out of the fact that, while temporarily in Chicago, Ill., Hiram Grosman and another had executed two promissory notes, and that Mrs. Grosman, the wife of Hiram Grosman, had executed a continuing guaranty of the payment of the notes. A decree was rendered for the plaintiff in the District Court, but was reversed by the Circuit Court of Appeals, on the ground that it subjected her separate property to the payment of the demand, contrary to the public policy of the state in which the suit was brought. Mrs. Grosman and her husband were domiciled in Texas, as the plaintiff knew, and made the contracts while temporarily in Chicago. The question presented to the court was whether the law of Illinois or that of Texas was to prevail. The court said:

"The contract being a continuing one of uncertain duration, the plaintiff had notice that in case of a breach it probably might have to resort to the defendant's domicile for a remedy, as it did in fact. In such a case, very possibly an Illinois court might decide that a woman could not lay hold of a temporary absence from her domicile to create remedies against her in that domicile that the law there did not allow her to create, and therefore that the contract was void. * * * But when the suit is brought in a court of the domicile there is no room for doubt. It is extravagant to suppose that the courts of that place will help a married woman to make her property there liable in circumstances in which the local law says it shall be free, simply by stepping across a state line long enough to contract. * * * It is one thing for a court to decline to be an instrument for depriving citizens belonging to the jurisdiction of their property in ways not intended by the law that governs them, and another to deny its offices to enforce obligations good by the lex domicilii and the lex loci contractus against women that the local laws have no duty to protect."

The case of Potter Manufacturing Co. v. Arthur, Trustee in Bankruptcy, 220 Fed. 843, 136 C. C. A. 589, Ann. Cas. 1916A, 1268, 34 Am. Bankr. Rep. 75, is quite analogous. The bankrupts resided in Springfield, Ohio, and, as contractors, were en-

gaged in construction work at Troy, Ohio. In August, 1913, they went to Indianapolis, Ind., and arranged to purchase from the Potter Company a trench excavating machine. The written contract, signed by both parties, showed that the delivery was to be f. o. b. Indianapolis, and that part of the price was to be paid in five installments each alternate month, as evidenced by five promissory notes; and provided "that full title to said property shall remain in the said Potter Manufacturing Company until payment in full has been made." The machine was taken to Troy, Ohio, and there remained. Upon the adjudication in bankruptcy, part of the purchase price remained unpaid, and the Potter Company filed a petition praying that the trustee in bankruptcy be ordered to surrender the machine. The District Court held that the trustee's title was good as against the Potter Company, and upon this judgment there was an appeal.

The Ohio statute (section 8568, Gen. Code) provides that the reservation of title in such a contract "shall be void as to all subsequent purchasers and mortgagees in good faith and creditors, unless" the contract is recorded in the county of the vendee's residence. There is no such statute in Indiana. The contract was not recorded anywhere. The Court of Appeals for the Sixth District said:

"We think the law of Ohio, not of Indiana, controls as to the necessity for recording. Ordinarily, by reason of the completed delivery in Indiana, title would have passed in that state, and it might be argued that the effect of recording laws, as to contracts passing title in Indiana, would be determined by the rule of that state; but here, title did not pass upon delivery, and part, at least, of the basis of this argument disappears. Aside from that consideration, we regard it as the established rule that where the parties to such a contract at the time contemplate that the property is to go at once, and before any use by the vendee, into another state and there remain quasi-permanently, the law of the situs thus given to the porperty will control the application of a recording statute."

Notwithstanding the machine itself bore a notice that it remained the property of the Potter Company, the court held that the contract was to be governed by the law of the state of Ohio, and, the instrument not having been recorded, the property passed to the trustee.

In Matter of Bettman-Johnson Co., 250 Fed. 657, 163 C. C. A. 3, 42 Am. Bankr. Rep. 128, in the fourth paragraph of the syllabus, it is said:

"The rights of a claimant under a trust receipt under which money was advanced to a manufacturer to purchase property are governed by the law of the state where the property was located and the manufacturer had its place of business at the time of its bankruptcy."

This decision is lengthy and contains a ful review of the authorities, and a reading of the opinion will be more satisfactory than brief quotations therefrom.

Now, in view of these authorities, it becomes pertinent to inquire as to the character of the property affected by the contract and as to the purposes intended to be effectuated by that instrument.

The Stutz Motor Car Company of America, Inc., is engaged in the manufacture and sale of Stutz automobiles, with its home office at Indianapolis, Ind. Its district sales office was located in Chicago. Edgar S. Meyer conducted the negotiations in Chicago. These resulted in the preparation and signature by Meyer of a contract which provided for the sale by petitioning company to Meyer, operating as the Memphis Stutz Company, of certain automobiles, which were located in the city of Memphis. The contract was sent to Indianapolis for signature by the president of the company. The company thereupon issued and sent to Meyer an order on which they say he secured delivery of the cars.

It is contended by petitioner that the contract must be governed by the laws of Indiana, because the last operative act to perfect the same, to wit, the signature of its president, was performed in that state. The facts do not bear out this contention, because the last operative act to put the contract into effect was the delivery of the cars to Meyer at Memphis. Had the cars not been delivered to him, it is obvious that the contract would never have become effective.

From an examination of the contract and from the testimony hereinabove referred to, it is patent that it was the purpose of petitioning company to establish in Memphis a sales office or distributing agency for its automobiles. True, nothing is said in the contract about any automobiles, except those particularly described in it; but petitioner entered into a contract with Meyer trading as the Memphis Stutz Company, which fact leaves no room for doubt as to the intention and purpose of the parties.

[1] The automobiles which were the subject of the contract were in Memphis, or in Tennessee, at the time of the execution of the instrument. The business contemplated by the instrument was to be conducted in Tennessee. If there was a default in the performance by Meyer of any of his obligations, as was pointed out in Pritchard v. Norton and in Union Trust Company v. Grosman, supra, petitioners must have contemplated the necessity of resorting to the courts of Tennessee for the enforcement of their rights. Under all of the facts and circumstances, petitioners must be held to have contracted with a view to the laws of the state of Tennessee, and under the authorities cited above the contract must be construed accordingly.

Counsel for petitioner cite the Tennessee case of Snyder v. Yates, 112 Tenn. 309, 79 S. W. 796, 64 L. R. A. 353, 105 Am. St. Rep. 941. In that case the court cited with approval the following language of Chief Justice Marshall in the case of Harrison v. Sterry, 5 Cranch, 298, 3 L. Ed. 104: "The law of the place where a contract is made is, generally speaking, the law of the contract; i. e., it is the law by which the contract is expounded. But the right of priority forms no part of the contract itself. It is extrinsic, and is rather a personal privilege dependent on the law of the place where the property lies, and where the court sits which is to decide the cause."

The court is not unmindful of the fact that in Pritchard v. Norton, supra, it was held that the parties cannot be presumed to have contemplated a law which would defeat their engagements. However, in the present instance the contract is not void under the laws of Tennessee, but is unenforceable only, as will presently be observed, as to that portion of it in which it is attempted to reserve the title.

*II and III. Whether such a contract is valid as against an ancillary receiver in bankruptcy. If valid, whether the petitioning claimant can retake, not only the Stutz automobile denominated in the contract, but also the used Stutz and fifteen hundred dollars cash.*

[2] The first question for determination in this branch of the inquiry is as to whether or not under the contract Meyer, trading as the Memphis Stutz Company, had the power to sell these automobiles. There is, however, little difficulty in settling that question, for the reasons already indicated: First, that it was contemplated that he should act as a distributor for Stutz automobiles; and, second, it was provided in the contract itself that he was to "place said motor cars on exhibition in its sales room."

In the case of Manufacturing Co. v. Nordeman, 118 Tenn. 384, 100 S. W. 93, the Supreme Court of Tennessee, speaking through the distinguished Justice Neil, said:

"A conditional sale of personal property, as understood in this state, means one in which the title is retained by the vendor, with no right in the vendee to sell the property [citing authorities], and in which the property is not subject to the debts of the vendee."

In that case, it is true, an attempt was made to retain title to a bill of dry goods sold to the S. Steinberg Dry Goods Company by the Star Clothing Company. The dry goods company was adudged bankrupt, and the Star Clothing Company demanded the return of the goods by the trustee in bankruptcy. The court stated that the question presented was whether there could be a lawful conditional sale to a retail merchant of goods to be resold in the prosecution of his business. After holding that there could be no such thing in Tennessee as a conditional sale of articles intended for resale, the court said:

"We are aware that a different view of this question is entertained in some of the states, but we believe the foregoing to be the sounder view and most in accord with public policy. It is certainly in line with our own previous decisions, and with the disinclination of this court to extend law of conditional sales further than has already been done, since they are essentially out of harmony with the policy which underlies our registration laws."

This is the leading case in Tennessee on this subject and certainly settles the policy of the law in that state. See, also, Mayer v. Catron (Tenn. Ch. App.) 48 S. W. 255.

Further investigation of this subject develops that this pronouncement of the Supreme Court of Tennessee is in line with the decisions of the United States Circuit Court of Appeals for the Sixth District. See Mishawaka Co. v. Westveer, 191 Fed. 465, 112 C. C. A. 109, 27 Am. Bankr. Rep. 245; Jno. Deere Plow Co. v. Mowry, Trustee, 222 Fed. 1, 34 Am. Bankr. Rep. 284. The United States District Court for the Eastern District of Pennsylvania seems to be of the same opinion, for in the case of Matter of Frank J. R. Shiffert, 281 Fed. 284, 48 Am. Bankr. Rep. 632, decided in June, 1922, the syllabus reads:

"Where a motor company delivered an automobile to bankrupt under an instrument called a 'trust agreement' which provided that bankrupt took no title to the automobile, accepted it in trust as bailee, and agreed to redeliver it to the company on demand, the company agreeing to sell the automobile to bankrupt at a price for which bankrupt gave a promissory note, such agreement to be surrendered when the note was paid, such agreement was a conditional sale, and not a bailment, and the motor company could not reclaim the automobile as against the trustee in bankruptcy of bankrupt."

Counsel cite and insist upon the application of the decision of the Supreme Court in Indiana in Andre v. Murray, 179 Ind. 576, 101 N. E. 81, L. R. A. 1917B, 667, Ann. Cas. 1916A, 87, in which it was held that where a stock of goods sold under a conditional sale was transferred in bulk by the conditional buyer, and later the conditional buyer went into bankruptcy, the conditional seller could reclaim all of the goods taken over by the trustee in bankruptcy. Inasmuch as conditional sales of goods for resale are void under the laws of Tennessee —that is, so far as the retention of title is concerned—this decision can have no application.

From what has been said, it results that that portion of the contract in question in which it is undertaken to retain the title to the automobiles is void and unenforceable in Tennessee. As was said by the Supreme Court of the United States in Union Trust Co. v. Grosman, supra: "If the decree would have been right in a court of the state of Texas, it was right in a District Court of the United States sitting in the same state."

*IV. Whether the petitioning creditor is precluded from filing a petition of reclamation in a federal court where it has failed to comply with the statutory requirements for foreign corporations necessary before doing business in the state of Tennessee.*

It is stipulated by counsel that the Stutz Motor Car Company of America, Inc., never complied with the foreign corporation laws of Tennessee. Section 2545 of Shannon's Annotated Code of Tennessee (1917) reads:

"*May Do Business Here, When.*—All corporations chartered or organized under the laws of other states or countries for any purpose whatsoever, which may desire to do any kind of business in this state, may become incorporated in this state, and may carry on in this state the business authorized by their respective charters or the articles under which they are or may be organized, and may enjoy the rights and do the things therein specified, upon the terms and conditions and in the manner and under the limitations herein declared."

There are numerous decisions of the Supreme Court of Tennessee holding that a foreign corporation which attempts to do business or does business in the state of Tennessee without complying with the terms of this statute are prohibited from maintaining any action, etc., in the courts of the state of Tennessee, but it will be sufficient to review only one of these decisions. Interstate Amusement Co. v. Albert et al., 128 Tenn. 417, 161 S. W. 488.

In this case the amusement company, a corporation with its situs in Chicago, sued Albert et al., growing out of a contract made with the Chicago concern by Albert et al. in Chattanooga for the booking and employing of actors to perform in the state of Tennessee. The contract stipulated that the sum of $10 per week for certain weeks should be paid to the plaintiff out of the salaries of the actors. The plaintiff was to collect certain booking fees. The court said of the operations of the plaintiff:

"Its operations in Tennessee were manifestly employed for the general prosecution of its ordinary business, and clearly within the prohibition of our statutes. It has been too long settled to need discussion that a foreign corporation guilty of noncompliance with these statutes can have no remedy growing out of its transactions made in violation of them; and this is true, even in a case where the illegality is made to appear by proof alone without a pleading pointing it out. * * * We think the present case falls within the general rule that a corporation is doing business within a particular state when it transacts therein some substantial part of its ordinary business, continuous in character as distinguished from merely casual or occasional transactions."

In this case there was a writ of error sued out of the Supreme Court of the United States and the opinion of that court, reported in 239 U. S. 560, 36 Sup. Ct. 168, 60 L. Ed. 439, approved the holding of the Supreme Court of Tennessee that the amusement company was doing business in the state and in all respects approved the decision of that court.

[3] In the present case it is perfectly clear, so much so as to be beyond reason-

able contention, that it was the purpose of the petitioner to do business in the state of Tennessee, and to continue to do business in that state. The proof is undisputed that it had already had one distributing agency at Memphis, which had been discontinued, and the contract itself is convincing evidence of the fact that it was undertaking to establish another agency. For the reasons stated, this court is of opinion that petitioner had no right to maintain the present petition in reclamation.

It is said that this statute relating to foreign corporations "makes no reference whatsoever to United States District Courts, but only affects the enforcement of such contracts in the state courts. The various state Legislatures have no control whatsoever over the right of a foreign corporation to redress its wrongs in the United States courts, nor does the particular statute invoked pretend to extend to the federal judiciary." This proposition is untenable, for the reason that in decisions too numerous to mention the nisi prius or appellate courts of the United States have repeatedly said that the statutes of the various states, when not repugnant to the federal Constitution or laws, will be enforced by the courts of the United States. Union Trust Co. v. Grosman, supra.

### Motion to Dismiss.

[4] At the close of the brief a motion was offered by petitioner "to dismiss the suit against the ancillary receiver, not being the proper party to this lawsuit and to this litigation." In the reply brief of petitioner it is said that this receiver has no power "to preserve the question that the ancillary receiver has no power to seize and sell property of the bankrupt, nor to contest questions of title. The trustee takes title everywhere, regardless of jurisdiction, and an ancillary receiver has no interest whatsoever in the property, except such as is given him under the Bankruptcy Act."

This motion apparently loses sight of the state of the pleadings. The first step in this litigation consisted of two bills filed in the chancery court by petitioner against certain parties claiming the automobiles in question. Pending those proceedings, bankruptcy supervened, an ancillary receiver was appointed in this district, and the District Court ordered the automobiles and money delivered to such receiver, which was done; thereupon the Stutz Motor Car Company of America, Inc., filed a petition in reclamation in this court. The Central Trust Company of Illinois, having been appointed receiver in bankruptcy by the District Court at Chicago, filed its ancillary petition in the Western district of Tennessee and was appointed ancillary receiver in the latter district in aid of the proceedings in bankruptcy in the Northern district of Illinois.

Section 2 of the Bankruptcy Act, as amended by the Act of June 25, 1910 (Comp. St. § 9586), specifically authorizes courts of bankruptcy to "exercise ancillary jurisdiction over persons or property within their respective territorial limits in aid of a receiver or trustee appointed in any bankruptcy proceedings pending in any other court of bankruptcy." And, as pointed out by Judge Sanford in Re Patterson Lumber Co. (D. C.) 247 Fed. 578: "The right to seize property of the bankrupt necessarily involves, however, as an incident to the exercise of such jurisdiction, the right to determine whether property so seized is in fact the property of the bankrupt; since otherwise the court has no authority to seize it."

Now, the power to determine the ownership of the property being one incident to the exercise of ancillary jurisdiction, and the petitioner having submitted that question to the determination of this court, by the filing of its petition in reclamation, it cannot be doubted that this court may properly entertain this proceeding to settle that issue. It is equally clear that, if the property in controversy belongs to the estate, it will pass in due course to the trustee, and that the receiver in this jurisdiction is acting for and on behalf of the estate. It would be better practice had the trustee elected to intervene, but no authority has been cited indicating that the ancillary receiver may not proceed to collect the assets of the bankrupt in this jurisdiction for the purpose of delivering same to the trustee in the primary proceeding under such orders as this court may hereafter make.

It is said that the ancillary receiver has no power to sell the property of the bankrupt and the case of In re Patterson Lumber Co. (D. C.) 247 Fed. 578, is cited. That case is authority for the proposition that, while the court of ancillary jurisdiction has the right to determine whether property seized by it is in fact the property of the bankrupt, it rests with the court of primary jurisdiction the right to determine final disposition of the property. The motion to dismiss is therefore overruled.

The Intervention Petition of M. E. Lesser.

[5] It will be recalled that Mr. Lesser was the counsel for Edgar S. Meyer, trading as the Memphis Stutz Company. Mr. Meyer, apparently in the latter part of May, suffered a nervous breakdown and was later adjudged insane. The record does not disclose that Mr. Meyer was in any financial difficulty at the time he was stricken, and the troubles which gave rise to the proceeding in bankruptcy seemed to have been due to the illness of Mr. Meyer and his inability to transact his business.

When Mr. Meyer became ill, Mr. Lesser sets out in his petition that he made a trip to Chicago for the purpose of conferring with Mr. Meyer and Mr. Judd, the latter having apparently been a partner in the business, for the purpose of protecting their interests and of conserving their assets for the benefit of their creditors. It is set out in the petition that on arrival at Chicago Mr. Lesser found the affairs of the alleged bankrupts in a most involved and precarious condition; that he remained in Chicago a week, and that as the result of his efforts an agreement was reached satisfactory to all parties then in interest, and whereby the affairs of the bankrupt were settled. Mr. Lesser sets out in his petition that his expenses on this trip were at least $150, and that he made a charge against the bankrupts of $350 for his services. He further sets out that the legal representatives of the bankrupts in Chicago, as well as the creditors who had become parties to the settlement, agreed that this fee and expense account were reasonable and proper.

Without going into details, it is very clear that the expense and the amount of traveling expenses and the fee of $350 are not subject to reasonable objection, and it only remains to consider whether Mr. Lesser is entitled to payment of this $500 out of the funds in the hands of the receiver. The facts are readily stated. When Mr. Lesser returned from Chicago the employees of the Memphis Stutz Company had sold to Mrs. Robert Buckingham one of the Stutz cars for $1,500 in cash and a used Stutz machine which was taken in trade. As Mr. Lesser was the Memphis legal representative of the bankrupts, this money was placed in his hands for the purpose of paying to him his fee and expenses, aggregating $500, and of distributing the other $1,000 in accordance with the agreement which had been reached in Chicago. After the $1,500 had been received by Mr. Lesser and before

distribution, proceedings were instituted in the chancery court of Shelby county, Tenn., as hereinbefore outlined, in which proceedings certain injunctions were issued. Mr. Lesser was not a party to either of these chancery suits, but out of respect to those proceedings he retained this fund of $1,500 in his hands, and later surrendered the same to the ancillary receiver, subject to his right to recover the $500 which he claims to belong to him.

Mr. Lesser's contention is that he was paid the $500 by the Memphis employees of the bankrupt, with the consent of all of the creditors who had joined in the Chicago agreement, and that this money is in fact his own. The only question which arises in this connection is as to whether or not this payment constitutes an unlawful preference under the act of Congress relating to bankruptcy. No answer was filed by the petitioner to the petition of Mr. Lesser, but counsel for petitioner has submitted a memorandum brief on that subject.

The petition of Mr. Lesser sets out that, when he returned from Chicago, he regarded all of the business difficulties of the bankrupt as having been satisfactorily adjusted, and he states in his brief that when he received this money he had every reason to believe that the payment was not an unlawful preference, but, on the contrary, that the affairs of the bankrupts were in such shape that they would be worked out to the satisfaction of all concerned. There is no proof in the record to controvert this agreement of Mr. Lesser; in fact, as stated, no answer was filed by the Stutz Motor Car Company of America, Inc., to the petition of Mr. Lesser, and no proof has been taken on the subject.

It is contended by petitioner that this question cannot be settled in the present controversy, because the trustee in bankruptcy, who has since been appointed, is not a party to these proceedings; but, as already pointed out, the receiver is engaged in the collection of the assets of the bankrupt for the benefit of the estate. Upon the showing made by this record the court concludes that the payment to Mr. Lesser of the $500 was made under the circumstances stated in his petition, and that at the time he received this payment he verily and honestly believed that all of the affairs of the bankrupts had been adjusted in a manner satisfactory to all creditors, and that he was not receiving a preference.

Let an order be entered in accordance with the conclusions here announced, and

granting the Stutz Motor Car Company of America, Inc., leave to file within 15 days from and after the entry of such order a petition to the United States District Judge for review.

A. A. Hornsby and W. P. McDonald, both of Memphis, Tenn., for receiver.

Ewing, King & King, of Memphis, Tenn., for petitioner.

ROSS, District Judge. This case is before the court on a petition to review the action of the referee, wherein questions presented by the pleadings were determined by him. A very full and able opinion has been filed herein by the referee, in which all the matters presented for consideration are fully discussed and are definitely decided.

A consideration of the record discloses that the questions of fact as found by the referee are well supported, and, being fully satisfied as to his conclusions thereon and his construction of the law, his opinion is adopted and made the opinion of this court, and is in all things confirmed. While other authorities might be cited on the question of the right of interveners to maintain their petition on the ground that they have not complied with the state statutes as to foreign corporations, reference is made to only the following as recent authorities: Maverick Mills v. Davis (D. C. Mass.) 294 Fed. 404; Fore River, etc., Corp'n v. Commonwealth (Mass.) 142 N. E. 812, decided February 29, 1924; Kansas City, etc., Co. v. State, 161 Ark. 483, 256 S. W. 845, decided December 10, 1923.

An order will be entered in accordance with this opinion and the opinion of the referee.