EISENMAYER MILLING COMPANY *v.* GEORGE E. SHELTON
PRODUCE COMPANY.

Opinion delivered March 12, 1928.

CORPORATIONS—FOREIGN CORPORATION DOING BUSINESS IN STATE.—
Where a foreign corporation shipped flour into the State for sale
by brokers and stored the flour with a produce company, retain-
ing the title to the flour, and thereafter, on failure of the brokers
to sell the flour, arranged with the produce company to sell it, the
transaction being nothing more than an agency contract, *held* that
the corporation was "doing business in the State," within Craw-
ford & Moses' Dig., §§ 1825-1832, regulating foreign corpora-
tions doing business within the State, and, not having complied
therewith, was precluded from maintaining an action within the
State.

Appeal from Pulaski Circuit Court, Third Division;
*Marvin Harris,* Judge; affirmed.

*Rogers, Barber & Henry* and *J. A. Tellier,* for appel-
lant.

*John E. Miller* and *Charles W. Mehaffy,* for appellee.

McHANEY, J. The only question necessary for our
determination in this case is whether the appellant, a
Missouri corporation, not having complied with the laws
of this State relating to foreign corporations, was doing
business in this State in violation of such laws, and there-
fore not authorized to maintain this action. The circuit
court held against appellant in this regard, and it has
appealed. The facts are substantially as follows:

Appellant shipped a carload of flour to Sevier &
Linthicum, brokers, in Little Rock, and had same stored
with appellee for a stipulated fee of 30 cents per barrel
for storage and delivery, and invoiced same to Sevier
& Linthicum at a stipulated price, to be sold by them at
such price above the invoice price as they might add by
way of profit, and requested appellee to furnish appel-
lant with copies of dray tickets in order that they might
check deliveries. Appellant also instructed appellee to
have said flour insured in the name of appellant, and have
the policy sent to it, and it would pay the premium. In
other words, appellant shipped and invoiced a carload of

flour to Sevier & Linthicum, and, by its own arrange-
ment, stored same with appellee, insuring it in its own
name, was the owner of the property, and authorized
Sevier & Linthicum to peddle the flour out to purchasers
at their own price, and to settle with it for the invoice
price. A letter from appellant to appellee regarding
these matters is as follows:

"Please confirm by mail to the Eisenmayer Milling
Co., Springfield, Missouri, arrangement we made yester-
day for you to store and deliver our flour in Little Rock
on basis of 30 cents per barrel. We will be represented
in Little Rock by Sevier & Linthicum, and you will please
make deliveries in accordance with their instructions, and
mail the mill once a week copies of all dray tickets; these
dray tickets will enable the mill to keep track of the
flour in your warehouse, as well as the sales made by
Sevier & Linthicum. I will also ask that you kindly attend
to the insurance as soon as the first car arrives, have
policy issued for $2,000 in favor of Eisenmayer Milling
Company, Springfield, Missouri. Please instruct agent
to mail policy direct to the mill, and they will remit to
cover."

This arrangement between appellant and the brokers
lasted only three or four weeks, during which time the
brokers sold only eleven or twelve barrels of this carload
of flour, and paid appellant therefor. Sevier & Linthi-
cum then dissolved partnership, and, as a result, were
unable to continue to dispose of appellant's flour. Upon
being advised of this fact, appellant arranged with appel-
lee to sell the remainder of this carload of flour, and to
remit to it as the flour was sold, appellee to receive 30
cents per barrel selling charge, in addition to the 30
cents per barrel for storage and delivery, and a charge
made for re-sacking some of the flour, sacks for which
were furnished by appellant. In other words, the
arrangement made with the brokers, and, subsequent
thereto, with appellee, was nothing more than an agency
contract with the brokers and appellee to sell appel-
lant's flour and to remit therefor as the same was sold.

There was no outright sale of said flour either to the brokers, Sevier & Linthicum, or to appellee. Such flour was not the property of the brokers or appellee, could not have been levied upon by creditors as their property, but, on the contrary, according to the undisputed testimony of appellant's witnesses, said flour had at all times belonged to it, and was being sold for its account by the brokers and appellee. Appellee failed to pay for a portion of said flour, and this suit resulted.

As heretofore stated, the circuit court held that appellant was doing business in this State in violation of the foreign corporation laws of this State, and was therefore not authorized to maintain this suit. Sections 1825 to 1832 inclusive, C. & M. Digest, provide the terms and conditions under which foreign corporations may do business in this State, and the penalty for doing such business without compliance therewith, a part of the penalty therefor being the making unenforceable of any contract by such foreign corporation in this State, and prohibiting its enforcement in any of the courts of this State.

In the recent case of *Kansas City Structural Steel Co.* v. *State,* 161 Ark. 483, 256 S. W. 845, the steel company, a foreign corporation, contracted to build a bridge in this State, and sublet the work to the Yancey Construction Company. It thereafter shipped the structural steel into this State, consigned it to itself, and furnished the subcontractors with bolts, reinforced rods and other material, although the actual work of construction was done by the Yancey Construction Company as independent contractors, and this court held that these transactions constituted "doing business" in this State within the provisions of C. & M. Digest, §§ 1825-1832, regulating foreign corporations doing business in this State as aforesaid. In that case, as in this, the contention of appellant was that these transactions were wholly interstate in character. They relied there, as here, upon the case of *Rose City Bottling Works* v. *Godchaux Sugars, Inc.,* 151 Ark. 269, 236 S. W. 825, and *L. D. Powell Co.* v. *Roun-*

*tree,* 157 Ark. 121, 247 S. W. 389, 30 A. L. R. 414. We there held, as we now hold, that the facts in those cases do not control here.   To illustrate, in the case of *L. D. Powell Co.* v. *Rountree, supra,* the L. D. Powell Company is a lawbook company, a foreign corporation, not having complied with the laws of this State, and, through its traveling salesman, took an order from a party in this State for the sale of certain law-books, which were shipped to the purchaser under a contract retaining title until the purchase price was paid.   The purchaser thereof, having failed to pay for the books, later turned them over to an attorney in payment of a fee.   The book company claimed the books under its reservation of title, and the attorney having them in possession admitted the validity of the claim and offered to deliver the books to the agent of the company.   The agent thereupon, by agreement with the attorney, resold the books to him, under a contract similar to the one under which they were first sold. This court held that the first transaction was interstate in character, and that the latter was but a continuation of the original transaction, and did not constitute the doing of business in this State in violation of our laws. It was there said:

"The books were not shipped into the State as sole and independent property of appellant for the purpose of selling them to the appellee or any other person. On the contrary, they were shipped into the State by appellant to McNeill on an order for future delivery, obtained by appellant's traveling agent. The McNeill contract clearly covered an interstate transaction. The recovery of the books under the McNeill contract amounted to a collection growing out of an interstate transaction. The collection was made in books instead of money, and we think the resale of them, in order to convert them into money, was a continuation of the interstate transaction." *Hogan* v. *Intertype Corporation,* 136 Ark. 52, 206 S. W. 58.

In the latter case this court differentiated between an interstate and intrastate transaction as follows:

''One test laid down by the Arkansas cases differentiating an interstate transaction from an intrastate transaction is the ownership of the property after it arrives in the State. An interstate transaction contemplates a consignor without and a consignee within a State, or *vice versa.*''

We think the facts in the case at bar are much stronger to show an intrastate transaction than were the facts in the cases just quoted from. Here there was no sale of the flour to Sevier & Linthicum. On the contrary, it was shipped and invoiced to them, stored with appellee by an arrangement made between appellant and appellee to pay 30 cents per barrel for storage and delivery while Sevier & Linthicum were peddling the flour to such purchasers as they might induce to buy same. This arrangement lasted about three weeks, during which time Sevier & Linthicum sold only about twelve barrels of flour, for which they paid appellant, and then dissolved their partnership. Thereupon appellant employed appellee to sell its flour, and agreed to pay him an additional 30 cents per barrel for making sales thereof. The facts in this case are altogether different from those in the recent case of *Linograph Co.* v. *Logan,* 175 Ark. 194, 299 S. W. 609, where many of the decisions of this court pertaining to this subject are collected.

It would serve no useful purpose to set out the facts in that case and attempt to distinguish it from this. Suffice it to say that the undisputed facts here show that the shipment of the flour into this State in the first instance was not a sale to Sevier & Linthicum, and that the arrangement between appellant and appellee was not a sale thereof in continuation of the former arrangement between appellant and Sevier & Linthicum. It amounted to no more than a storage of the flour in this State as its own, and the employment of an agent to make sales thereof from time to time, as purchasers could be found therefor. Had it been a sale in the first instance, with title retained, and the flour retaken and a resale thereof made to appellee, the facts would be wholly different,

and the result would be a transaction in interstate commerce, as held in the case of *L. D. Powell Co.* v. *Rountree,* supra.

We therefore hold that the undisputed facts show the transactions in this State were intrastate in character, which constituted the doing of business in this State in violation of law, and that appellant cannot maintain this action. Judgment affirmed.

MEHAFFY, J., disqualified, and not participating.

KIRBY, J., dissents.