NATIONAL DISTRIBUTORS, INC. v. HOUSTON H. SIMARD, ET UX

5-4890                                        440 S.W. 2d 31

Opinion Delivered April 28, 1969

*Warner, Warner, Ragon & Smith* for appellant.

*Bethell, Stocks, Callaway & King* for appellees.

J. FRED JONES, Justice. This is an appeal by Na-

tional Distributors, Inc. from an adverse summary judgment in favor of Houston H. Simard rendered by the Sebastian County Circuit Court. National was the plaintiff in the trial court and the suit was on a guaranty agreement.

On December 9, 1963, Jackson's Furniture, Inc. of Fort Smith contracted to refinish and sell antique furniture and serve as an outlet for antique furniture supplied by National Distributors, Inc. a Tennessee corporation. Jackson's was to sell the furniture and remit to National 134% of the original cost price within eight hours after Jackson's had collected for the furniture sold. Jackson's became indebted to National and on April 5, 1965, it executed and delivered to National a promissory note payable on demand for $22,004.66. Jackson's failed in business and was placed in receivership by chancery court decree. National filed claim for $24,453.64 in the receivership proceedings and was paid $1,934.29 as its pro rata portion of the assets. By chancery decree dated December 26, 1967, National was given judgment for $22,004.66 balance due on the note.

On February 9, 1968, National filed the present suit in the Sebastian County Circuit Court against Houston H. Simard, president and general manager of Jackson's, to recover on an undated guaranty agreement whereby Simard guaranteed the payment of any and all indebtedness owed by Jackson's to National. By way of answer and counter-claim, Simard claimed that he was entitled to a declaratory judgment on the basis that the guaranty agreement was void and unenforceable since National was not qualified to do business in Arkansas. National filed a denial to the counter-claim and Simard responded with a motion for summary judgment. The court granted the motion for summary judgment and on appeal to this court National designated the following points for reversal:

"The trial court erred in finding that appellant

was 'doing business' in Arkansas; or, at the very least, an issue of fact exists on that point.

The trial court erred in sustaining the summary judgment because appellee failed to sustain the burden of demonstrating that there are no genuine issues of material fact."

In granting the motion for summary judgment, the trial court found that the record presented no genuine issue of material fact, and the motion for summary judgment was granted under Ark. Stat. Ann. § 64-1202 (Repl. 1966) which states:

"*Any foreign corporation which shall fail to comply with the provisions of this act and shall do any business in this State,* shall be subject to a fine ... and as an additional penalty, any foreign corporation which shall fail or refuse to file its articles or incorporation or certificates as aforesaid, *cannot make any contract in the State which can be enforced by it either in law or in equity ...*" (Emphasis supplied.)

The guaranty agreement sued on by the appellant is as follows:

"The undersigned, for value received, hereby guarantee the payment of any and all indebtedness now or hereafter incurred by Jackson's Furniture, Inc. to National Distributors, Inc., including specifically all presently due amounts in the approximate amount of $17,500.00 and future indebtedness which may be incurred from time to time, it being the intent of this agreement by the undersigned to personally guarantee payment of all indebtedness incurred by Jackson's Furniture, Inc. to National Distributors, Inc. at any time during the life of this guaranty agreement. It is the intention of this guaranty to create the same liability on our part to

and in favor of the said National Distributors, Inc. or its order as though we had actually executed separate guaranty agreements for each separate indebtedness incurred and to be incurred in the future by Jackson's Furniture, Inc, to National Distributors, Inc.

We hereby severally waive presentment for payment, notice of non-payment, protest and notice of protest, and due diligence in enforcing payment of any or all of said indebtedness; and consent that an extension of time for payment may be granted or renewal taken on all or on any of said indebtedness without notice to us.

s/ Houston H. Simard

s/ Dorothy J. Simard"

Appellant argues that there is no allegation that plaintiff came to Fort Smith for the execution of the guaranty agreement, and that it was actually mailed to the appellant in Tennessee. That appellant had no physical assets in Arkansas, no agent here, no office here, and that no services were performed here. Appellant argues that the record does not even suggest that any representative of plaintiff ever set foot in Arkansas, let alone conduct business here, and that the undisputed facts established that the transaction entered into by the parties in 1963 was a Tennessee contract which involved the interstate shipment of goods to Fort Smith. The appellant also argues: "it is elementary that Houston H. Simard's contract of guaranty was an enforceable promise on his part which was collateral to the primary obligation on the part of Jackson's Furniture, Inc. * * * Simard thus promised to answer for the debt of Jackson's Furniture, Inc., which was incurred in interstate commerce, and his guaranty cannot be severed or separated from his corporation's primary obligation."

While not so important to our decision in the case now before us, appellant was apparently doing business in Arkansas through Jackson's Furniture, Inc. under the agreements entered into in 1963. A note was executed by Jackson's for the indebtedness due under these agreements, appellant's rights thereunder were litigated in chancery court and it obtained judgment against Jackson's. The pertinent portions of the 1963 agreements, relied on by appellant, are as follows:

"It is agreed that NDI shall furnish adequate and continuing supply of antique furniture to Jackson's Furniture, Inc. on the following basis:

National Distributors, Inc. shall pay all purchase and transportation expenses to Fort Smith and shall furnish Jackson's with the original suppliers invoice on all purchases.

\* \* \*

National Distributors, Inc. and Beno Friedman further agree for a period of five years after this association might be dissolved for any reason; not to contact personally and to prevent their servants or acquaintances from contacting any customer or other business associate to whom they are introduced by Mr. Simard in the performance of this agreement.

A. The only exception to this shall be on antiques belonging to Jackson's Furniture, Inc. and now in stock.

B. National Distributors, Inc. shall be paid on terms set forth above 134% of the cost price of every piece of antique furniture sold by Jackson's Furniture, Inc. or by Houston H. Simard from this date forward.

C. This agreement shall continue for a period of 99 years unless 30 days cancellation notice is giv-

on one of the parties by the other via registered mail.

It is further agreed that Jackson's Furniture, Inc. shall furnish adequate and continuing sales outlet on the following basis for antique furniture provided by National Distributors, Inc.

Jackson's shall pay for all costs involved in selling, refinishing and delivering merchandise going to customers, and shall furnish National Distributors, Inc. with a carbon copy of every Jackson's invoice for antiques of any kind which Jackson's sells.

A. 34% shall be added to the National Distributors, Inc. cost price and the total shall be paid to National Distributors, Inc. within eight (8) working hours of the time Jackson's receives payment from its customer. On invoices, factoring and credit, the same terms and conditions apply here as in our agreement dated November 22, 1963, covering the Reneau's Wholesale antiques stock now in your possession.

\* \* \*

Further, Jackson's Furniture, Inc. and Houston H. Simard agree for a period of five years after this association might be dissolved for any reason; not to contact personally and to prevent their servants or acquaintances from contacting any supplier or other business associate to whom they are introduced by Benno Friedman in the performance of this agreement.

A. By December 15, 1963, Jackson's Furniture, Inc. agrees to furnish National Distributors, Inc. a complete list of all antiques now in stock not belonging to National Distributors, Inc. and as these pieces are sold they will be checked off the list. National Distributors, Inc. will receive no payment for

antiques on this list.

B.   As of start of business the first day of each month a complete inventory of pieces (numbers only) in stock and not sold will be furnished to National Distributors, Inc. by Jackson's Furniture, Inc.   This list will be placed in the mail at the latest by close of business the 5th of each month.''

An additional agreement dated December 9, 1963, is set out, in part, as follows:

''The following material belonging to NDI [National Distributors] is now in the possession of Houston Simard, President of Jackson's Furniture, Inc., Fort Smith, Arkansas.

\*   \*   \*

It is agreed that all material in this stock not paid for by Mr. Simard as of March 31, 1964, will be returned in good shape and at no expense to NDI . . .   Excepted from this statement will be the pieces which have been refinished by Simard, and these pieces shall remain on consignment in Ft. Smith until sold by Simard.

As each piece is sold, a copy of the invoice will be furnished to NDI.

Most sales are to be factored, and within 8 working hours after money is received by Mr. Simard from the factor, the amount of the 'NDI price' on the piece sold will be forwarded to NDI by Mail.''

Of course, a contract for the *sale* of merchandise to be shipped from a foreign corporation's place of business in another state to an Arkansas purchaser does not alone constitute doing business in Arkansas even when the contract is executed in this state.   In *Robertson* v. *Southwestern Co.*, 136 Ark. 417, 206 S.W. 755, this court said:

"A contract for the sale of merchandise to be shipped from appellee's place of business in Tennessee to the purchaser here does not constitute business in this State so as to bring the transaction under the ban of our statute, which prohibits a foreign corporation from doing business here without first filing copies of its articles of incorporation and obtaining permission to do business."

The ownership of the property is a determining factor as to the interstate-intrastate character of a transaction. In the case of *Hogan* v. *Intertype Corporation,* 136 Ark. 52, 206 S.W. 58, the appellant agreed to purchase a typesetting machine if it were demonstrated on his premises and performed as represented. The machine was shipped from out of state to Huntington, Arkansas, set up and demonstrated, whereupon appellant signed a note secured by a mortgage for the purchase price. In reversing the trial court's finding that the appellee was not doing business in Arkansas, this court said:

"We think it conclusively established by the facts in this case that the International Typesetting Machine Company owned the machine in question after it arrived in Huntington, Arkansas, and thereafter sold it to appellant, accepting in part payment notes executed and payable in Arkansas and secured by a mortgage on the machine, which was also executed and filed for record in this state. *One test laid down by the Arkansas cases differentiating an interstate transaction from an intrastate transaction is the ownership of the property after it arrives in the state.*" (Emphasis supplied.)

In *Eisenmayer Milling Company* v. *George E. Shelton Produce Company,* 176 Ark. 620, 3 S.W. 2d 688, appellant shipped a carload of flour to brokers in Arkansas, and had the flour stored with appellee. The brokers were authorized to sell the flour at their own price,

and pay appellant's invoice price and appellant was to be furnished dray tickets so that it could check deliveries. After three or four weeks the brokers dissolved their partnership and the appellant arranged with the appellee to sell the remainder of the flour paying appellant as it was sold less charges for storage and selling. In holding that appellant was doing business in Arkansas, this court said:

"... [T]he arrangement made with the brokers, and subsequent thereto, with appellee, was nothing more than an agency contract with the brokers and appellee to sell appellant's flour and to remit therefor as the same was sold. There was no outright sale of said flour either to the brokers ... or to appellee. Such flour was not the property of the brokers or appellee, could not have been levied upon by creditors as their property, but on the contrary, according to the undisputed testimony of appellant's witnesses, said flour had at all times belonged to it, and was being sold for its account by the brokers and appellee.

\*    \*    \*

... Suffice it to say that the undisputed facts here show that the shipment of the flour into this State in the first instance was not a sale to ... [the brokers] and that the arrangement between appellant and appellee was not a sale thereof in continuation of the former arrangement between appellant and ... [the brokers]. It amounted to no more than the storage of the flour in this State as its own, and the employment of an agent to make sales thereof from time to time, as purchasers could be found thereof. Had it been a sale in the first instance, with title retained and the flour retaken and a resale thereof made to appellee, the facts would be wholly different, and the result would be a transaction in interstate commerce, as held in the case of *L. D. Powell Co. v. Roundtree, supra.*"

The intrastate character of the relationship between the parties in the case at bar is clearly evident from the written agreements they entered into, and it is apparent to us from the plain wording of agreement, supra, that the appellant retained title to the goods in Jackson's possession until the goods were sold by Jackson's, and that the appellant was simply engaged in the antique furniture business through Jackson's Furniture, Inc. in Fort Smith, Arkansas.

It is apparent from the record before us, that Jackson's simply sold the furniture, paid for and furnished to it by the appellant, and instead of remitting 134% of the cost price to the appellant within eight hours after it was collected from the purchasers as Jackson's agreed to do, Jackson's either failed to collect or failed to remit until over a two year period it owed the appellant the sum of the chancery judgment, plus the amount appellant received from the liquidation.

The guaranty agreement actually sued on in this case is a unilateral agreement separate and apart from the contracts entered into in 1963 between the appellant and Jackson's Furniture, Inc. and is separate and apart from the promissory note given in 1965 on which judgment was entered and partially satisfied in 1967. The guaranty agreement was the only subject before the trial court in the case at bar and the appellee's affidavit in support of his motion for summary judgment states that this agreement was entered into and executed in Fort Smith, Arkansas, at the instance and upon the request of appellant's attorney in Fort Smith. Appellant's affidavit does not controvert appellee's affidavit on this point, but only states that the original promissory note, as well as the guaranty agreement, was mailed to appellant in Tennessee from Fort Smith, Arkansas.

The appellant already has its judgment on the promissory note and the validity of that judgment is not be-

fore us. The question before us is not where the appellant corporation was when it received its copy of the guaranty agreement signed by the appellee, and sued on in this case, the question on this point is where the contract was entered into. The appellee says it was in Fort Smith, Arkansas, and the appellant leaves this fact uncontroverted.

The judgment of the trial court is affirmed.

GEORGE ROSE SMITH, BROWN and FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice. I would reverse the summary judgment in this case as to Houston H. Simard.[1] I do not believe that the trial court or the majority has required appellee to meet the heavy burden resting upon him to show entitlement to this extreme remedy. Our cases with reference to this burden are outlined in my dissenting opinion in *Gordon* v. *Matson,* 246 Ark. 533, 439 S.W. 2d 627. I submit that there is a genuine fact issue in this case. As I see it, both the trial court and the majority have overlooked the most material issue raised by appellant. Although I do not agree with the treatment given the guaranty agreement in the majority opinion as "a unilateral agreement separate and apart from the contracts entered into in 1963," the material fact in issue which determines whether appellant is to be allowed to maintain suit in this state is the place of making of the contract. Our statute closes the doors of our courts to a nondomesticated foreign corporation *only* on those actions involving contracts *made in this state.* *U. P. I.* v. *Hernreich d/b/a Station KZNG,* 241 Ark. 36, 406 S.W. 2d 317. Under the law of this state, a contract is deemed to have been entered into at the place where the last act necessary to the completion of the contract took place. *Cooper* v. *Cherokee*

---

[1] Appellant does not seek reversal of the summary judgment against Dorothy J. Simard, so Houston H. Simard is referred to herein as appellee.

*Village Development Co.*, 236 Ark. 37, 364 S.W. 2d 158; Leflar, *Conflicts of Law*, § 122, page 230; Leflar, *American Conflicts Law*, § 144, page 353. See also *Hicks Body Co. v. Ward Body Works*, 233 F. 2d 481 (1956). It is recognized that a written contract acquires no validity until delivery, either actual or constructive. *Dem. Ptg. & Litho. Co. v. Parker, Auditor*, 192 Ark. 989, 96 S.W. 2d 16. A mortgage prepared at the office of the lender in Oklahoma, mailed to its representative within Arkansas for signature of the mortgagors and returned to the lender was held to constitute an Oklahoma contract. *Smith v. Brokaw*, 174 Ark. 609, 297 S.W. 1031.

There is no place of execution, or date, shown on the guaranty agreement exhibited with the amended complaint in this case. Appellee did not allege in his answer and counterclaim that the guaranty agreement was entered into, or made, in the State of Arkansas. Appellee's only allegation having to do with the status of the appellant as a foreign corporation, and relating to the guaranty agreement, was that appellant has engaged in business in Arkansas without qualifying to do business in the state. Appellee's motion for summary judgment asked that the trial court adjudicate that the guaranty agreement and promissory note alleged as the basis of appellant's claim were void and unenforceable. In appellee's affidavit supporting his motion, he merely stated that the guaranty agreement was presented to him and his wife by an attorney acting for appellant in Fort Smith, Arkansas, and that it was executed at his place of residence there.

Appellant's response was supported by the affidavit of Jay Fred Friedman. Friedman stated that he was one of the attorneys for appellant and that he had personal knowledge of the facts set forth in the affidavit. He stated that the promissory note and guaranty agreement sued on were both sent to the appellant by United States mail in interstate commerce and across state lines, as substantiated by the date receiving stamp

786

placed on all incoming mail by appellant.

I do not see how it could be more clearly made to appear that appellant was contending that the contract was made in Tennessee and not in Arkansas. Under this state of the record, there is certainly a material fact issue as to the place where the contract was made. At least, appellee failed to show that there was not an issue of fact on this point by simply showing the isolated fact as to the place of signing.

While the trial court found that there was no genuine issue of fact relevant to issues raised by the motion for summary judgment and dismissed the complaint holding the note and guaranty agreement null, void and unenforceable, the court made specific findings of fact, none of which has any bearing at all upon the place where the contract was made. The court's specific finding in that respect was simply that the appellant engaged in business in Arkansas, and, in the course of such business, obtained from appellee the guaranty agreement sued on. This point is argued by appellant under both points relied upon in his brief.

Brown, J., joins in this dissent.